LARSSON, Respondent, *vs.* McCLURE, Appellant.

*February 27 — March 16, 1897.*

*Master and servant: Risk assumed.*

A laborer, engaged in shoveling gravel from a gravel pit, who, having knowledge of the liability of the gravel on the face of the pit to fall down as excavation proceeded at the bottom, and of the fact that blasting was being resorted to in order to break off the frozen surface, continues to work in the pit, must be held to have assumed the risk of injury from the falling of the bank at the place where he was working, as incident to his employment, and he cannot recover from his employer for an injury caused thereby.

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Reversed.*

This action was brought to recover damages for a personal injury sustained by the plaintiff while working as a common laborer in a gravel pit for the firm of Mitchell & McClure, and by reason of their alleged negligence in not furnishing him with a safe place to work, and in not notifying him of the danger to which he was exposed where he was directed to work, and of which he had no knowledge.   The bank by which he was working in the gravel pit caved in upon him, and in consequence his leg was fractured, and he sustained other injuries, etc.   The action was brought against the defendant, *McClure,* as surviving member of the said firm, and he answered, denying the principal allegations of the complaint, and alleging that the plaintiff's injuries were caused by and through his own negligence.

It appeared that the plaintiff, at the time of his injury, January 18, 1895, had worked on Mitchell & McClure's railroad about eight days, and was then engaged in loading gravel upon cars in a gravel pit four or five cars in length; that he commenced in the morning, and had worked at the back car, but was directed by the boss, Sam Erickson, who hired the men, to go forward about 100 feet, where he had worked only about half an hour, when he got hurt.   There was frost in the ground, and they had to blast the bank, so that they could get the thick crust off, and take the bank down, and get sand and gravel.   Charles Erickson did the blasting, commencing at the west corner, working east, and removing the frozen crust; and the plaintiff testified that he could not see whether he had removed the frozen crust in front of the bank; that he was at work, shoveling, about six or eight feet from the edge of the frozen crust, when the bank fell down, and struck him on the left leg, so that he fell over, and received the injuries complained of; that he did not see the bank falling before it struck him,— it came so quick.   The plaintiff had worked at railroad work and in gravel pits for three years before.   And he further

testified, in substance, that in the present instance, to get
the frozen part off, they dug along with crowbars, and lifted
it away; that Charles Erickson helped the boss, Sam Erick-
son, to get the gravel loose,— to blast it; that he went on
top of the bank with a drill and put in blasts, and when he
got ready to explode them they all went away; that he had
fired five or six blasts that morning; that when they began
to blast, the bank was straight up and down, and that they
all shoveled up gravel right along the bank; that a blast
was fired a short time before he got injured, and that just
before the blast he had got right up under the bank; that
the boss told them when the blast was to come off, and then
they went away, and, when he told them, they all came
back; that when they got back after that explosion the boss
told them all to take the same places; that half an hour
after the blast he got hurt; and that at that time some big
chunks had fallen down, and there was loose gravel in the
bottom, which he was getting out, when the bank fell, while
he was close under, and within a foot of, the bank. Further,
that the frost in the bank was a foot or so thick, and that
he did not see the chunk before it fell, and could not tell,
from looking up there, that it was loose,— could not say
whether any one could, by looking up there from down
below; *that he did not see any cracks in the bank, nor look
for any;* that the chunk that fell projected out from the
bank about two feet, and when he went back to work he
looked, and did not see anything dangerous, and kept on
shoveling sand from the bottom near the bank; that Charles
Erickson did not say anything to Sam Erickson before he
(plaintiff) got hurt,— did not hear him say that they ought
to take the chunk down.

Charles Erickson testified that he stood right by the
plaintiff when he got hurt; that the bank was frozen nearly
three feet deep; and that the frozen part had to be re-
moved and piled before the men could shovel. The blast-

Larsson vs. McClure.

ing would loosen the crust, and it made big cracks in it; and after the crust had been removed the men would shovel the sand. The bank was nine feet high. We had just taken what frozen earth the blast threw off, and put it in a pile back of where the men were shoveling. The plaintiff was about ten feet from the east end. It was all solid there. Further to the east end, the crust had not been removed. That he (witness) had been blasting on top where the plaintiff got hurt, and he asked the foreman or boss if he would let him take the crust off. That he was then standing about five feet from the plaintiff. The crack was at the top, and came out in front, and ran towards the east along the bank, and it came down the front of the bank nearly to the bottom. It was about nine feet long, and the piece was standing up. The foreman said I was not boss, and to keep still. He told the men to keep to work. At this time the plaintiff went right in there to work. The foreman, Sam Erickson, set him to work there, and the plaintiff went to shoveling and loading the cars from the bank where we had taken off the crust. The foreman saw the crack, and said he did not think it would come down, and plaintiff shoveled there half an hour, when the frozen chunk came down on him. It was nine feet long and two and a half feet thick. He also testified that he did not tell the plaintiff that it was dangerous there, and did not know that it was; that he did not call the plaintiff's attention to the cracks; that he called out in a loud voice to the foreman, and said, "Erickson, will you let me take down that frost?" and told him it was dangerous, and spoke in English; that he said, "You have got to watch out for that,— it will fall down on them;" that he told the plaintiff to look out for that piece,— that it might fall off and hurt him; that he spoke in English, and he understood; that he stood there for fifteen minutes, and then it fell down on him; that there was no trouble in seeing the cracks there from below; they were one inch wide, and they

extended up and down the bank nine feet; that he could see them plainly from where he was standing, off towards the engine, and he went up to the bank where *Larsson* was, and saw the cracks there, and he was there with him, but did not call *Larsson's* attention to it.   He testified that the plaintiff understood some English; that when he told him to look out for the chunk he did not stop work; that Sam Erickson had charge of the work there, and run the crew, and employed the men to work there when they came out.   Mitchell and *McClure* were not there.

The defendant moved for a · nonsuit, which was denied. At the close of the testimony the defendant asked the court to direct a verdict in his favor, but this was denied.   The plaintiff had a verdict for $337, upon which judgment was entered in his favor, and from which the defendant appealed.

The cause was submitted for the appellant on the brief of *Knowles, Dickinson, Graham & Wilson*.   They argued, *inter alia*, that the place where the plaintiff was injured was one the preparation and keeping safe of which was a part of the work the plaintiff and his fellow workmen were employed to perform.   *Petaja v. Aurora Iron Mfg. Co.* (Mich.), 64 N. W. Rep. 335; *S. C.* 66 N. W. Rep. 951; *Farwell v. B. & W. R. Corp.* 4 Met. 49; *Peschel v. C., M. & St. P. R. Co.* 62 Wis. 338; *Benn v. Null,* 65 Iowa, 407; *Beesley v. F. W. Wheeler & Co.* 103 Mich. 196; *Coal & Mining Co. v. Clay's Adm'r,* 51 Ohio St. 542.   The danger was open to the observation of the overseer and the workmen alike, and the injury was one incident to the business.   *Vincennes W. Supply Co. v. White,* 124 Ind. 376; *Griffin v. O. & M. R. Co.* id. 326; *Pederson v. Rushford,* 41 Minn. 289; *Rasmussen v. C., R. I. & P. R. Co.* 63 Iowa, 236; *Olsen v. McMullen,* 34 Minn. 94; *Naylor v. C. & N. W. R. Co.* 53 Wis. 661; *Hobbs v. Stauer,* 62 id. 108; *Strahlendorf v. Rosenthal,* 30 id. 674; *Behm v. Armour,* 58 id. 1; *Simmons v. C. & T. R. Co.* 18 Am. & Eng. R. Cas. 50.

*T. L. McIntosh,* for the respondent.

PINNEY, J. The plaintiff, in entering upon the employment in which he was engaged when injured, assumed all risk or danger of injury ordinarily and fairly incident to such service. When the danger is alike open to the observation of all, both the master and servant are upon an equality, and the master is not liable for an injury resulting from the dangers incident to the employment. *Naylor v. C. & N. W. R. Co.* 53 Wis. 661; *Showalter v. Fairbanks, Morse & Co.* 88 Wis. 377; *Paule v. Florence Mining Co.* 80 Wis. 350. The plaintiff was familiar with the kind of work he was required to perform, and had had considerable experience in working in gravel pits, and had worked on railroads. He knew that blasting was being resorted to to break down the frozen bank, and to get at the sand and gravel where he worked; and five or six blasts for that purpose had been set off on the day in question, and before he was injured. He had witnessed and understood the effect they produced in shattering the bank in front of which he was working, and which was not more than 100 feet in length, rendering it insecure and liable to fall down as excavation proceeded at the bottom. The situation itself suggested to him the dangers incident to the service, and the necessity of proper caution for his own protection. He chose, notwithstanding, to continue work under the circumstances, instead of declining the service, and it is entirely well settled that he must be held to have assumed the risk or danger, so far as it was open for his observation. He testified that after the last blast had been set off where he had been set to work, " I did not see any cracks in the bank; *I did not look to see.*" He was bound to take ordinary care to observe whether any, and what, dangers were incident to his service. " Where the defect or danger is open or obvious, the knowledge of it, on his part, will be presumed or imputed to the servant, as a matter of law; and an adult servant is presumed to possess ordinary intelligence, judgment, and discretion to appreciate such danger, so as to regulate his conduct and

avoid it; and, if he continues in the service and suffers injury from such danger, he has no right of recovery against the master." *Luebke v. Berlin Machine Works*, 88 Wis. 448, and cases cited; *Haley v. Jump River L. Co.* 81 Wis. 412, 421–425. The evidence of the plaintiff's witness Charles Erickson shows that there had been a serious and dangerous crack about one inch wide in the bank on top, extending along the bank, and down its face at the place where plaintiff was working, that could be readily observed, even from the train; and the witness felt that the situation was dangerous, and warned the plaintiff of it in a loud voice, when standing within five feet of him; but the evidence tends to show that the plaintiff may not have heard or understood him. Whether he did hear or understand, knowledge of a danger so open and obvious is imputed to him by the law. His own evidence shows that he omitted the proper caution, and failed, under circumstances so highly suggestive of danger, of looking out for it.

The danger to which he was exposed was the direct result of the operations of the plaintiff and of his fellow workmen in blasting the bank and in excavating at the foot of it. As they were on the ground, and as the danger was open and obvious, and they had ample facilities to discover and remove it, there would seem to be no ground for holding that the master might not impose such duty on the workmen themselves. *Jones v. Florence Mining Co.* 66 Wis. 275. The case is distinguishable from that of *McMahon v. Ida Mining Co., ante*, p. 308, where the danger was concealed, and the plaintiff had no knowledge of its existence, but was justified in the belief that no danger existed. The present case does not seem to fall within the rule that the master must furnish the servant a reasonably safe place in which to work, inasmuch as the plaintiff and his fellow-servants practically created the place and its attendant perils from hour to hour, in the prosecution of their

labors; and the condition was constantly shifting by reason of their own acts, of which, as well as their probable consequences, they must be held to have had notice. The negligence, if any, in this view of the case, would be that of the plaintiff and his fellow-servants, and the risk of it must be regarded as assumed by the plaintiff as incident to his employment; and, in any view that may be taken of the case, it must be regarded as a risk assumed by the plaintiff, as incident to his employment. *Petaja v. Aurora Iron Mining Co.* (Mich.), 64 N. W. Rep. 335; *Peffer v. Cutler*, 83 Wis. 281–284. We think, from the undisputed evidence, that the plaintiff must be held to have assumed the risk of the injury of which he complains, and that the circuit court erred in refusing the motion for a nonsuit, and afterwards in refusing to direct a verdict for the defendant.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.