# CASES DETERMINED

AT THE

# January Term, 1899.

MIELKE, Appellant, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Respondent.

*April 4 — April 25, 1899.*

*Master and servant: Injuries to quarryman: Safe place to work: Assumption of risk: Fellow-servants.*

1. An employee in a stone quarry cannot recover for injuries sustained through the falling of a piece of rock from above upon the ledge on which he was at work, where such falling was due to thin clay seams which ran through the rock in all directions, the existence of which he knew as well as the foreman or superintendent, and it does not appear that the latter had, or could have secured by the use of ordinary care, any knowledge superior to that of the employee as to the particular danger.
2. An employee in a stone quarry in which by reason of the blasting and removal of stone by himself and his fellow-workmen the conditions and surroundings are constantly changing assumes the risk of the place becoming unsafe through such operations, and cannot recover for injuries caused by the falling of a fragment of stone which in the course of the work had become loosened.

APPEAL from a judgment of the circuit court for Sauk county: R. G. SIEBECKER, Circuit Judge. *Affirmed.*

This action is brought to recover damages for injuries sustained by the plaintiff while working in defendant's stone quarry at Ableman, Wisconsin. His right to recover is based upon the following facts:

The face of the quarry was about 100 feet from top to bot-

tom. The method of quarrying was to clear off a space at the top six or eight feet wide, then drill holes four or five feet deep about six feet from the face of the ledge, and, after exploding the blast, bar off the rocks loosened by the explosion, and to continue working down in that manner until the bottom was reached. This left the face of the quarry nearly or quite perpendicular. The fragments and rubbish from continued operations were allowed to accumulate at the foot of the cliff, reaching up forty or fifty feet, and slanting at an angle of about forty-five degrees. The quarry faced the west. At the time of the accident, plaintiff was on a ledge which had been worked down thirty or forty feet from the top. This ledge extended north and south, but had been worked part way across the face of the quarry, so that at the north end of the ledge there was a shoulder or setoff, extending to the top of the quarry. There had been no work done on this ledge for three or four months prior to the accident, until the afternoon before. At that time plaintiff and two other workmen drilled a hole near the back of the ledge, at the corner next to the shoulder, and the blast was exploded that day, but no further work was done. On the morning of the following day, the plaintiff, with eight other workmen, by direction of the superintendent, went upon the ledge to bar off the stone loosened by the explosion of the night before. While so at work, a large piece of rock, four or five feet long, one foot thick at the bottom, and about two and one-half feet wide, fell from the face of the shoulder or setoff, about seven or eight feet above the ledge, killing one of the workmen, and precipitating plaintiff off the ledge into the hole, causing the injuries complained of. The piece of rock which fell seems to have been separated from the adjoining rock by a thin clay seam, which could be seen from the face of the cliff, but was not discernible from the ledge. The evidence showed that the clay seams extended over the face of the quarry in different places, but did not run in any

uniform direction, or in a straight course. The negligence complained of is based upon the failure of the defendant to furnish a reasonably safe place for plaintiff to work.

At the conclusion of the plaintiff's evidence the defendant moved for a nonsuit, on the grounds that the evidence did not show that the defendant was guilty of any want of ordinary care, and that the law of safe place did not apply under the circumstances in proof. The court granted the motion for a nonsuit, and from a judgment dismissing the complaint the plaintiff appeals.

For the appellant there was a brief by *Herman Grotophorst, R. M. La Follette,* and *Rufus B. Smith,* and oral argument by *Mr. Smith.*

For the respondent there was a brief by *Fish, Cary, Upham & Black,* and oral argument by *John T. Fish.*

BARDEEN, J. If we understand the appellant's contention, it is that defendant is liable for his injuries because it failed to furnish him with a safe place to work. The proposition that it is the duty of the master to furnish the servant a reasonably safe place in which to perform his labors has been laid down so many times by this court that it is unnecessary to cite decisions to support it. There are, however, certain correlative obligations of the servant which limit the doctrine stated. The servant is bound to know, and is said to have assumed, all such dangers of the employment as were open and obvious, and such as he could have discovered by reasonable attention. *Osborne v. Lehigh Valley C. Co.* 97 Wis. 27. In that case it was said: "Such risks he fails to appreciate at his own peril. As against him, the defendant had the right to carry on its business in such place and manner, and with such appliances, as best suited its choice or interests, even if some other would have been safer, so that it did not violate the law of the land nor expose him to dangers which he did not know and could

not learn by the exercise of reasonable attention." Another rule is that the servant takes upon himself the natural and ordinary risks and perils incident to the performance of his labors, whether arising from the carelessness of fellow-servants in the same line of employment or from the manner in which the work is carried on. The qualification to this rule is that the danger contemplated in entering into the contract shall not be aggravated by any omission on the part of the master to keep the surroundings in the condition in which, from the terms of the contract or the nature of the employment, the servant had a right to expect they would be kept. Bailey, Personal Injuries, § 458. Hidden perils, known to the master and not discoverable by the servant by the use of ordinary care, must be revealed, or the master is liable.

That the stone quarry was not a safe place to work was obvious to any person of ordinary comprehension. That the plaintiff appreciated that fact is evident from his testimony, in which he says: "I looked to see whether it was all safe. I looked carefully enough to see whether there had been any stone displaced. I looked in that way, because I always did, when I went any place to work, to see whether it was safe. *There might be danger of rock falling down.*"

Counsel for plaintiff says, in his statement of the evidence, that it was the invariable custom in the quarry, whenever a blast had been exploded, to make a careful inspection, to ascertain whether any fragments of rocks loosened by the blast were likely to fall, before sending men to work on the ledge. This was done by tapping with an iron bar. It was admitted that it was impossible to discover the impending danger from the ledge by mere visual inspection. The rock that fell was seven or eight feet above the ledge. Under the invariable custom stated, it must be assumed that the proper inspection had been made at the time the ledge was worked

down by this dangerous rock. There is no suggestion that the rock looked dangerous from the ledge, and, from the fact that it was so far above the heads of the workmen, it is not easy to perceive just how the danger could have been discovered, had the usual inspection been made. But there is no evidence that such inspection was not made. We are then left to judge from the appearances on the face of the cliff. The evidence is undisputed that there were thin clay seams, from a quarter to the thirty-second of an inch in thickness, running in all directions on the face of the cliff, which were as evident to the workmen as they were to the foreman in charge. It does not appear that any particular danger was to be apprehended therefrom, or that the foreman had any knowledge of the conditions not possessed by the workmen, or that he could have secured such knowledge. The existence of the clay seam was as obvious to plaintiff as to any one, and, in absence of evidence that the foreman or superintendent had knowledge of the danger, or could have secured it by the use of ordinary care, superior to that of the workmen, no liability for the accident would follow. The plaintiff knew all the facts which the foreman or superintendent knew. The probability of the rock falling was as evident to one as to the other. No principle is better settled than that, under such circumstances, the risk is assumed. *Showalter v. Fairbanks, M. & Co.* 88 Wis. 376.

But there is another principle upon which a recovery in this case must be denied. The facts, as we view them, bring it substantially within the cases of *Peffer v. Cutler*, 83 Wis. 281; *Larsson v. McClure*, 95 Wis. 533; *Petaja v. Aurora I. M. Co.* 106 Mich. 463; and *Paule v. Florence M. Co.* 80 Wis. 350. The plaintiff and his fellow-workmen were practically making the place in which they were to work. At each succeeding blast the conditions and surroundings were changed. The danger to which they were exposed was the direct result of their own operations. It was the result

of their common labor, including that of the foreman. The work was of a hazardous character. The pla'ntiff was familiar with the work. He knew that the condition was constantly changing by reason of his own acts. He appreciated the danger, because he knew that rocks were liable to fall. As stated in the *Larsson Case:* "The negligence, if any, in this view of the case, would be that of the plaintiff and his fellow-servants, and the risk of it must be regarded as assumed by the plaintiff as incident to his employment; and, in any view that may be taken of the case, it must be regarded as a risk assumed by the plaintiff as an incident to his employment."

*By the Court.*— The judgment of the circuit court is affirmed.