Nix, Respondent, vs. C. Reiss Coal Company, Appellant.

*April 25—May 13, 1902.*

*Master and servant: Injury from falling timber: Unsafe place: Notice of defect: Proximate cause: Instructions to jury: Special verdict: Evidence: Appeal and error.*

1. A fire in defendant's coal yard had damaged a structure of timbers, about twenty feet high, supporting tramways for the distribution of coal, and plaintiff, with others, was engaged in removing the soft coal, shoveling it into barrows and wheeling it to railroad cars. Much of the structure had been pulled down, plaintiff assisting, but a portion of it remained where they were at work. The top of the coal pile, which was about eighteen feet high, was covered with a thick icy crust, and it was necessary to break this up with picks. A co-employee so engaged loosened a mass weighing sixty or seventy pounds, which rolled down the face of the pile and struck an upright post or timber, from about which the coal had been removed so that only three or four feet of it remained covered. A horizontal timber resting on the top of the post immediately fell and injured the plaintiff. These facts, together with evidence tending to show, among other things, that the top of the post and the cap by which the horizontal timber was secured had been partially burned away; that the damage was greater on the westerly side and was not easily discoverable from the ground to the eastward, from which direction the men removing the coal had advanced; that plaintiff's duties had not taken him west of the post; and that defendant's foreman had inspected the structure and this particular post only a day or two before the accident,—are *held* sufficient to sustain findings of a special verdict to the effect that the support or fastenings

of the beam which fell had been so far destroyed by the fire as to render the place where plaintiff was working unsafe and dangerous; that defendant was chargeable with knowledge of that fact; that the plaintiff was not chargeable with such knowledge; and that defendant should reasonably have foreseen that such an accident was likely to result from the defect.

2. It appearing that the post in question was so braced that its top leaned toward the east, the fact that, although the mass of coal struck the post on its westerly side, the horizontal beam which had been resting on the partially burned-away top fell to the eastward, and the post was afterwards found leaning slightly to the west, does not render unreasonable or purely conjectural the conclusion that the defective condition at the top of the post was the proximate cause of plaintiff's injury by the falling timber.

3. An instruction that, in order to find proximate causation, the jury must be satisfied that the injury was the natural and probable consequence of the defect, and foreseeable by the exercise of ordinary care, was correct, and, while some of the terms used might properly have been amplified, the omission of such amplification was not error, in the absence of a formal request therefor.

4. A refusal to submit for special verdict the question whether the risks and dangers of plaintiff's work were open and obvious to a person of ordinary intelligence, is *held* not to have been error, where the jury were required to find whether or not the plaintiff knew of the unsafe and dangerous condition or by the exercise of ordinary care should have known of it.

5. The fact that plaintiff and his fellow laborers, as they carried off the coal, progressed from one end of the shed towards the other did not constitute such a change in, or creation of, the conditions of the place to work, as to relieve the defendant from liability for damages caused by the dangerous condition of the post at the point where it supported the timber.

6. The admission of evidence of the taking down of a portion of the superstructure lying in the direction from which the removal of the coal had progressed is *held* not to have been prejudicial to defendant, where the court excluded, because not pleaded, any liability of the defendant for any weakening of the remainder of the structure arising from such removal.

7. Assignments of error not argued by appellant will not ordinarily be considered.

APPEAL from a judgment of the circuit court for Sheboygan county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

Action for personal injuries suffered by the plaintiff as an employee in defendant's coal yard at Sheboygan. That coal yard extended two or three hundred feet north and south along the water's edge, which was on its west. The westerly part of it consisted of a shed under which the hard coal was kept, and the easterly part was open dumping ground for soft coal, and bounded easterly by railroad tracks. The portions devoted to the two different kinds of coal were separated by a fence a short distance east of the eaves of the coal shed. The yard was completely traversed by a superstructure of tracks for the distribution of coal in small cars. This structure consisted of upright 10x10 posts, approximately twenty feet high, and twenty feet apart in each direction. These posts were surmounted by 8x8 or 8x10 timbers, running over their tops from north to south, secured from slipping off by the spiking of two-inch plank onto the upright posts and onto the surmounting timbers, forming caps, so called. On top of, and at right angles to, these north and south timbers, and along each line of posts running east and west, were the tracks, which were supported by two planks, 3x10, set edgewise. The upright posts were braced to each other and to the ground.

On December 31, 1900, the yard was mainly filled with coal extending to a height of some eighteen feet, or nearly up to the timbers on top of these posts. On that day a fire broke out which destroyed the coal sheds and burned down some of the superstructure of tracks, reaching in this respect about to the fence dividing the hard and soft coal, but leaving the track structure undestroyed from thence eastward to the railroad tracks, although fire had run over it to some extent further eastward, charring and blackening it. The fire also communicated itself to the piles of coal, and apparently for some days afterward the fire department poured water copiously onto the coal, which in many places formed a thick

coating or crust of ice, mingled, of course, with the upper portions of the coal.

Commencing on the 1st of January, the defendant set to work a gang of men, who commenced on the east side of the yard, and proceeded to move the soft coal piled therein into cars on the railroad track above mentioned, working their way gradually westward. The plaintiff was amongst those employed; his business, like that of others, being to shovel the coal from the pile into a wheelbarrow, and wheel it to the railroad cars. In doing this it was continually necessary for some of the men to climb on top of the pile with picks and break down the icy crust, and the peril from such falling lumps or chunks was of frequent occurrence, and was obvious to all of the workmen. On the 19th of January the work had progressed so that the plaintiff and those immediately with him were working under the last section of the tram track structure which remained undestroyed by fire, and were within about twenty feet of the fence dividing the hard and soft coal. A few days before, the tram track structure immediately south of where they were at work had been pulled down by cutting off the upright posts, and by sawing off the north and south timbers on a line about six feet south of the uprights which were left standing. Plaintiff, together with other workmen, had participated in the taking down of such structure by pulling on ropes after the cutting away had been done. On the day in question, one of the crew with whom the plaintiff was at work went up on top of the pile to break down the icy crust, and succeeded in breaking off a mass of some sixty or seventy pounds' weight, which rolled down the inclined face of the coal pile, and struck the southwestern-most upright there standing, from about which the coal had been removed so that only about three or four feet of it was still covered. The collision was followed immediately by the fall of the north and south horizontal timber resting on top of that upright, together with some of the superstructure

above, whereby plaintiff was severely injured. The upright did not fall, but after the fall of the superstructure was found still standing, but the top leaning slightly westward; the timber having fallen on the easterly side of it.

A special verdict of nineteen questions was taken, the material parts of which are to the effect that plaintiff was working at a place directed by one Roth, as foreman; that the support or fastenings of the beam which fell had been so far destroyed by the fire as to render the place where plaintiff was at work when he was injured an unsafe and dangerous place; that the fall of said beam was caused by such destruction of its supports and fastenings; that the defendant, through its proper representative, knew that the place was then unsafe and dangerous, and that by the exercise of ordinary care the defendant should have made the place in question reasonably safe before the time when the plaintiff was injured; that the defendant should "reasonably have foreseen . . . that the natural and probably consequence of permitting the trestlework and the supports or fastenings of said beam or timber to remain in the condition in which they were at and before the time of the injury would be to cause said beam to fall upon and injure some of the coal shovelers;" that the condition of the trestlework and the supports or fastenings of said beam was the proximate cause of plaintiff's injury; that the plaintiff's injury was not the result of accident or misfortune which defendant could not have foreseen and prevented by the exercise of ordinary care; that the plaintiff did not have knowledge of the unsafe and dangerous character of the place, nor by the exercise of ordinary care should he have had such knowledge; and that no want of ordinary care on his part contributed to produce the injury.

Defendant at the close of the evidence moved for the direction of a verdict in its favor, and afterwards moved to reverse the answers to most of the material questions, and also

moved to set aside the verdict and for a new trial, all of which
motions were denied, and judgment entered in favor of the
plaintiff, from which the defendant appeals.

For the appellant there was a brief by *Phillips & Hicks,*
and oral argument by *M. C. Phillips.*

For the respondent there was a brief by *C. A. Dean,*
attorney, and *Simon Gillen,* of counsel, and oral argument by
*Mr. Gillen.*

DODGE, J. 1. The assignments of error to which substan-
tially the whole of appellant's brief and argument is devoted
involved the contention that there was no evidence to support
the several findings of the jury upon which liability of the
defendant is predicated. The rules of law governing such a
situation are familiar, and need hardly more than statement.
The master owes it to his employee to make the place where
the latter is to work reasonably safe, so that injury is not
reasonably to be expected by one of ordinary foresight and
care. *McMahon v. Ida M. Co.* 95 Wis. 308, 70 N. W. 478;
*Mielke v. C. & N. W. R. Co.* 103 Wis. 1, 79 N. W. 22. This
duty is qualified by the further rule that the master is not
to be made liable, although there are defects, and although
the place is not safe, if such defects and unsafety either were
known to the employee, or were so apparent that they should
have been known to him in the exercise of ordinary care and
observation consistent with the situation presented. *Larsson
v. McClure,* 95 Wis. 533, 70 N. W. 662; *Dugal v. Chippewa
Falls,* 101 Wis. 533, 77 N. W. 878; *Mielke v. C. & N. W. R.
Co., supra.* The appellant asserts that there was no evidence
upon which the jury could have found that the place was un-
safe, or that, if so, the defendant knew it or by reasonable
diligence could have known it, or that the plaintiff was
ignorant, or could, consistently with reasonable care, have
been ignorant, of the true situation; and he further contends
that if the place in question were unsafe in the respect found

by the jury, namely, in the burning away of the fastenings which held the horizontal timber in place on top of the vertical post, still there is no evidence that the fall of the timber and the injury to the plaintiff were due to that condition.

We have examined the evidence with great care, and find that it is characterized by some measure of conflict and dispute as to the situation, and also by considerable measure of uncertainty in the application of the statements of witnesses to the situation and the structure under which the plaintiff was working. In the latter respect, of course, we must recognize the superior advantages of both jury and trial judge to understand what the witnesses meant. *Clifford v. M., St. P. & S. S. M. R. Co.* 105 Wis. 618, 81 N. W. 143. There is, however, no doubt that plaintiff was expected to work under this network of timbers and tram tracks, and that any condition thereof which rendered their fall probable in the course of the performance of the service as it had been laid out would justify an expectation of injury to workmen of the class of the plaintiff. It appears that the fire occurring three weeks before had been effective to burn away posts and superstructure for a considerable distance, but had lost that measure of force and destructiveness just short of the post near which plaintiff was injured, which is called in the testimony, and will be spoken of hereafter as, the "southwest post." It also appears that the fire had run to some extent over all the rest of the trestlework, but, generally speaking, not so as to seriously destroy timbers or impair the strength of the structure. There is evidence of two witnesses that as to this southwest post much more destruction had taken place than with reference to the others which were still standing. One witness says that he looked at the post after the timbers fell, and found that the top had been burned off. Another testifies that the cap was already gone, but that the burning was not easily discoverable from the ground to the eastward of this post, both because it was more on the westerly side of the post, and

because the timbers had some coating of ice, obscuring their true condition, but that such ice had been broken away on the westerly side of the post. There is also evidence that the defendant's foreman, generally in charge of the yard, had gone over this structure soon after the fire, and that he had gone onto and inspected the condition of this particular post only a day or two before the catastrophe. He contradicts the testimony as to its condition, but that, of course, could only suffice to make that a jury question.

In this situation, we are unable to say that there is no evidence that the fastenings intended to retain this large timber on top of the upright had not been so destroyed and impaired by fire as to render them inadequate; nor are we able to say, as the counsel for appellant argues, that the defendant and the plaintiff stood upon an equality as to their opportunities for knowledge. Plaintiff had been placed upon the ground, working from the east westward. He had had no duty, nor suggestion of any reason, which should take him to the westward of this alleged defective corner; and, as we have said, there is testimony that its defects were not apparent as he worked toward it on the ground. The shoveling away of coal at the bottom of the pile was the method adopted by the master for doing the work upon which plaintiff was employed. This rendered certain the precipitation of the coal from the top of the pile down the steeply inclined easterly face thereof from time to time, whether by reason of its own weight, or by reason of its being picked away, as was in progress at the time of the injury; and, of course, the contact of such falling lumps with the posts was not only a probability, but practically a certainty. The lump which fell at the time of the injury certainly cannot be said to have been of a size beyond reasonable expectation. It is described as about eighteen inches long by a foot wide and six or eight inches thick, and, while made up of coal fastened together by ice, it was no larger than lumps of soft coal are often found. So that the

peril of contact of such lumps with the standing posts was one of those with reference to which it was the duty of the master to see that the overhead structure was reasonably safe. Hence, upon the four questions as to the existence of a defect creating unsafety, the knowledge or opportunity of knowledge of the master, the ignorance of the plaintiff, consistently with due care, and the reasonableness of expectation that injury might result, we are clear that there was at least some evidence which might, to the minds of reasonable men, lead to the answers given by the jury.

But it is argued that the further question whether such defect was the actual cause of the fall of the timber and the plaintiff's injury is pure conjecture, into which the jury ought not to have been allowed to stray. We cannot think so. It is in evidence that the four upright posts constituting a section were connected by diagonal braces near the top, which drew the tops toward each other, so that the top of the post in question was leaning towards the northeast,—held there by the strain of the transverse braces. It is found by the jury that the caps, which under ordinary circumstances had been relied on to hold the horizontal timber in place and prevent it from slipping off of the top of the post, had been destroyed to such degree as to render the situation unsafe; and there is evidence that the top of the post had been burned off to some extent. Now, if in this situation one of the events likely to occur in the course of the work as the master directed it to be done, namely, the collision of a lump of coal with the post, was likely, in ordinary human experience, to cause this horizontal beam to slip off of the top of the post eastward, how can it be said that the jury, in view of the whole situation, and in the absence of evidence of any other cause, could not have concluded, as reasonable men, that that situation was the cause of the precipitation of the timber? We think they might. The timber could not fall without some cause. One is shown, sufficient within ordinary probabilities. The infer-

ence is reasonable that such one was the cause, in absence of any other reasonable one. It is urged that there is a physical fact inconsistent with such conclusion and which renders it unreasonable and impossible. That fact is that the timber was found on the easterly side of the post, whereas it is claimed that the effect of the collision of the lump of coal would have been to drive the post to the eastward, so that the timber would have fallen on the westerly side of it. We cannot say that this conclusion is unavoidable. If upon an inadequate and partially burned-away end of this post there were insecurely resting a timber, a mere jar might well suffice to set it in motion, in which event its slip would naturally be toward the east, as the top of the post inclined that way. There is no necessary and unavoidable inference that the fall of a sixty-pound lump of coal against a 10x10 timber, with the bottom embedded in three or four feet of coal, would serve to move that timber materially in the direction of the falling lump. We think it at least equally probable that, while the jar would be considerable, the actual movement of the top of the post to the eastward might be almost infinitesimal. Hence we find ourselves unable to declare that the jury could not, as reasonable men, have answered that the defective condition at the top of the post was the proximate cause of plaintiff's injury by the falling timber.

2. Appellant complains of the instruction to the jury defining "proximate cause." That instruction informed the jury that, in order to find proximate causation, they must be satisfied that the injury was the natural and probable consequence of the defect, and foreseeable by exercise of ordinary care. These are the essential elements, and, while more amplification of some of the terms used has been approved in some cases, the omission of such amplification is not error,—certainly when not formally requested. We find no error in the instruction on this subject.

3. Appellant urges a group of assigned errors predicated

upon the refusal of the court to submit, as part of the special
verdict, certain other questions. In view of the fact that in
a case of this simplicity some nineteen questions were sub-
mitted, we should expect to find redundancy rather than defi-
ciency. The first complaint is that the jury were not asked
whether the risks and dangers of the work were open and ob-
vious to a person of ordinary intelligence.. This fact, if it
existed, was an evidentiary one, and was naturally involved
in the two questions submitted, namely, whether the plaintiff
knew of the unsafe and dangerous condition, or by the exer-
cise of ordinary care should have known. Of course, the
latter of these questions must have been answered in the af-
firmative if that condition was open and obvious, and the
court carefully so instructed the jury. In the refusal of this
additional question no error was committed.

The appellant also complains that no question was sub-
mitted as to whether the conditions and surroundings of the
place of plaintiff's work were changing as a result of the work
in which he was engaged. The only defect upon which plaint-
iff was allowed to recover was the condition of the fastenings
of timber to the southwest post, resulting from a fire occur-
ring some three weeks before. There was no particle of evi-
dence that that condition was in any respect caused or changed
by reason of the work in which the plaintiff and his fellow-
servants were engaged. It was a condition existing before their
work commenced, and with reference to which their work was
done, and obviously was intended to be done by the defendant.
The fact that day by day, as they carried off coal, they pro-
gressed from under one timber to another, was not in any re-
spect changing or creating the conditions of the place of work
in the respect complained of and made the basis of liability.
Had the business of this gang of men been the tearing down
of a structure such as here described, it might be claimed that
weakening of the portions of the structure still standing, re-
sulting from previous work, was a condition which they them-

selves created and changed, and which therefore must be held
to be within their knowledge as fully as within that of their
employer. It would be as reasonable to contend that a painter
progressing, upward on a ladder, and injured by reason of a
defective rung, changed and therefore created the conditions
of his work, because he had gradually progressed upward to-
ward the defect. This principle of the employee's responsi-
bility for the conditions which he and the force with which
he works create is fully illustrated in *Larsson v. McClure,* 95
Wis. 539, 70 N. W. 662, and *Mielke v. C. & N. W. R. Co.*
103 Wis. 1, 79 N. W. 22. Those illustrations make obvious
its inapplicability to the situation presented in this case,—
of an inadequate and perilous overhanging structure, with
reference to which the plaintiff performed no duty and had
no relation, except to be compelled to work under it.

Complaint is also made of the failure to submit some other
alleged issues,—such, for example, as whether the weight of
ice broke the structure down, and whether any warning or
caution was given to the plaintiff. On neither of these, how-
ever, was there any conflict in the evidence to warrant their
submission to the jury; and, at best, the facts to be called out
by them would have been evidentiary upon certain of the
issues which were submitted and passed upon.

4. Exception was taken and error assigned upon the admis-
sion of evidence that a couple of sections of trestlework lying
to the south of that where plaintiff was injured were taken
down some two or three days before the accident occurred.
Wherein the admission of such testimony could have been
prejudicial to the appellant is not pointed out. The court
carefully excluded any liability of the defendant for any
weakening of the remaining structure which might have re-
sulted therefrom because not pleaded. The admission of
such proof was entirely natural in the description of the situa-
tion, which could hardly be made intelligible otherwise; but,
in any event, the fact so proved was alleged in the complaint

and not denied by the answer. We can discover no prejudice in the admission of this evidence, even if its admission were considered to be erroneous.

The foregoing are all of the errors argued by appellant, either in his brief or orally, though others are assigned. It cannot be the duty of this court, under such circumstances, to seek out the reasons for the assignment of others, or their applicability to the case. *Butler v. State,* 102 Wis. 364, 78 N. W. 590; *Cornell v. State,* 104 Wis. 527, 535, 80 N. W. 745. Among those which the appellant has deemed worthy of argument we find none which can justify us in reversing the judgment.

*By the Court.*—Judgment affirmed.