LONGPRE, RESPONDENT, *v.* BIG BLACKFOOT MILLING COMPANY, APPELLANT.

(No. 2,549.)

(Submitted December 14, 1908. Decided January 11, 1909.)

[99 Pac. 131.]

*Personal Injuries—Master and Servant—Defective Appliances— Duty to Inspect—Instructions—Pleadings—Defenses—Assumption of Risk—Negligence of Fellow-servant.*

Personal Injuries—Assumption of Risk—Pleadings.
    1. In order to make the defense of assumption of risk available to defendant in a personal injury action, it must be specially pleaded.
Same—Master and Servant—Negligence of Fellow-servant—Pleadings.
    2. The defense that the injury complained of by a servant was the result of the negligence of a fellow-servant, being of the same nature as that of assumption of risk, must also be specially pleaded before defendant master can avail himself of it.
Same.
    3. The rule that the defense of negligence of a fellow-servant must be specially pleaded is subject to the same limitations as that of assumption of risk and contributory negligence, to-wit, that, if the facts alleged in the complaint show that the servant is at fault, the pleading is demurrable, and also that, if the facts proven by plaintiff at the trial raise a presumption of contributory negligence on his part, he may be nonsuited, whether the defense is pleaded or not.

Same—Contributory Negligence—Conflicting Evidence—Question for Jury.
4.   Where, in an action by a laborer for damages for personal injuries alleged to have been suffered by reason of the breaking of the stock of a cant-hook, used to move logs, the evidence was conflicting as to whether plaintiff was guilty of contributory negligence in subjecting the appliance to unusual or unnecessary strain, the question was properly submitted to the jury.

Same—Master and Servant—Appliances—Duty to Inspect—Question for Jury.
5.   While it is the duty of the master, after having provided the servant with reasonably safe and suitable appliances with which to work, to inspect them both at the time of furnishing them and during the course of the employment to discover defects in them, such duty of inspection is not absolute; it does not require him to inspect appliances, simple in construction, which do not in themselves involve the element of danger; hence, an instruction that defendant was absolutely bound to inspect or cause to be inspected a cant-hook, used for moving logs, before it was delivered to plaintiff for use, was erroneous. The question whether it was defendant's duty to inspect it was for the jury to determine.

Instructions—Refusal—When not Error.
6.   Refusal of a requested instruction fully covered by those given is proper.

*Appeal from District Court, Missoula County; F. C. Webster, Judge.*

ACTION by Philip Longpre against the Big Blackfoot Milling Company. From a judgment for plaintiff, and from an order denying it a new trial, defendant appeals. Reversed, and new trial ordered.

*Messrs. Marshall & Stiff,* for Appellant.

In a case of this character the burden is on the plaintiff to show that the tool or appliance by which he was injured was not only defective, but was that character of tool which called for inspection, and care and prudence beyond that of purchasing the best in the market, of the best material and made by the best manufacturer.   The mere fact that the accident happened because of defective appliances or tools cannot be taken as evidence of the defendant's negligence.   (20 Am. & Eng. Ency. of Law, 86, 87.)   It is incumbent on him to show affirmatively all the elements of a right to recover; in other words, to prove all the facts which constitute or make apparent the alleged negligence of the master, and that it was the proximate cause of

the injury.   (Labatt on Master and Servant, sec. 832; *State ex rel. Hamelin* v. *Malster*, 57 Md. 287; *Atchison etc. R. R. Co.* v. *Ledbetter*, 34 Kan. 326, 8 Pac. 411; see, also, *Patton* v. *Texas & Pac. R. Co.*, 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361; *Stearns* v. *Ontario Spinning Co.*, 184 Pa. 523, 63 Am. St. Rep. 807, 39 Atl. 292, 39 L. R. A. 842; *Kincaid* v. *Oregon Short Line R. Co.*, 22 Or. 35, 29 Pac. 3.)

That the injury was caused by the negligence of a fellow-servant does not have to be pleaded to be available as a defense. (*Pennsylvania* v. *Fishback*, 123 Fed. 472, 59 C. C. A. 269; *Goodwell* v. *Montana Central Ry. Co.*, 18 Mont. 293, 45 Pac. 210; *Wastl* v. *Montana Union Ry. Co.*, 24 Mont. 161, 61 Pac. 9.)

"The employer is liable to the servant for negligence of a fellow-servant only when the employer's own negligence contributes to the injury, or when the other servant occupies such a relation to the injured party or to his employment in the course of which his injury was received as to make the negligence of such servant the negligence of the employer." (2 Labatt on Master and Servant, sec. 470.)

*Messrs. Hall & Patterson,* for Respondent.

The defendant having set up the defense of contributory negligence and not the defense of assumed risk, the only conclusion that could be reached is that the defendant did not rely upon and waived the latter defense.

The defense that plaintiff was injured through the negligence of a fellow-servant must be specially pleaded. (6 Thompson on Negligence, sec. 7625; *Layng* v. *Mt. Shasta Min. Spgs. Co.*, 135 Cal. 141, 67 Pac. 48; *Higgins* v. *Missouri Pacific Co.*, 43 Mo. App. 547.)   As to the liability of the master for an injury to a servant, caused by the negligence of another employee, see *Mast* v. *Kern*, 34 Or. 247, 75 Am. St. Rep. 580, 54 Pac. 951; *Northern Pac. Ry. Co.* v. *Herbert*, 116 U. S. 647, 6 Sup. Ct. 590, 29 L. Ed. 755.

The mere simplicity of a tool will not exempt the master from all care, or relieve him from liability under all circumstances; but the capacity, intelligence and experience of the servant, the character of the defects, his opportunity for detecting them, his situation and the circumstances calculated to withdraw his attention from them, as well as the fact that the servant has a right to rely upon the master to protect him from danger and injury, and in selecting the agent from which it may arise, are factors of varying importance, which must also be taken into account. (*Missouri K. & T. Ry. Co.* v. *Quinlan* (Kan.), 93 Pac. 633; *Southern Kansas R. Co.* v. *Croker,* 41 Kan. 747, 13 Am. St. Rep. 320, 21 Pac. 785; *Chicago K. & W. R. Co.* v. *Blevins,* 46 Kan. 370, 26 Pac. 687; *Louisville & N. R. Co.* v. *Roberts,* 24 Ky. Law Rep. 1160, 70 S. W. 833; *Baltimore & Ohio etc. R. Co.* v. *Amos,* 20 Ind. App. 378, 49 N. E. 854; *Vant Hul* v. *Great Northern R. Co.,* 90 Minn. 329, 96 N. W. 789; *Johnson* v. *Missouri Pac. R. Co.,* 96 Mo. 340, 9 Am. St. Rep. 351, 9 S. W. 790; *Deckerd* v. *Wabash R. Co.,* 111 Mo. App. 117, 85 S. W. 982; *Missouri Pac. Co.* v. *Speed,* 3 Tex. Civ. App. 454, 22 S. W. 527; *De La Vergne R. Mach. Co.* v. *Stahl,* 24 Tex. Civ. App. 471, 60 S. W. 319.)

Even though a fellow-servant is guilty of negligence contributing to the injury, if the negligence of the master also concurs to cause the injury, the master is liable. (2 Labatt on Master and Servant, sec. 814; *Stringham* v. *Stewart,* 100 N. Y. 516, 3 N. E. 575; *Grand Trunk R. Co.* v. *Cummings,* 106 U. S. 700, 1 Sup. Ct. 493, 27 L. Ed. 266; *Maupin* v. *Texas & P. R. Co.,* 99 Fed. 49, 40 C. C. A. 234; *Atchison, T. & S. F. R. Co.* v. *Lannigan,* 56 Kan. 109, 42 Pac. 343; *Northern Pac. Ry. Co.* v. *Poirier,* 67 Fed. 881, 15 C. C. A. 52; *Baltimore & Ohio R. Co.* v. *McKenzie,* 81 Va. 71; *Illinois C. R. Co.* v. *Swisher,* 61 Ill. App. 611; *Mexican Nat. R. Co.* v. *Musette,* 7 Tex. Civ. App. 169, 24 S. W. 520; *Noble* v. *Bessemer S. S. Co.,* 127 Mich. 103, 89 Am. St. Rep. 461, 86 N. W. 520, 45 L. R. A. 456; *Schwarzschild & Sulzberger Co.* v. *Weeks,* 72 Kan. 190, 83 Pac. 406, 4 L. R. A., n. s., 515.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The plaintiff was in the employ of defendant in its logging camp as a common laborer. He was required in the course of his work to assist in handling and moving logs to get them in readiness for transportation to defendant's mill. For this purpose he and his coemployees used cant-hooks furnished by defendant. It frequently happened that the wooden stocks or levers of these implements would be broken, and it became necessary to have them replaced by new ones. The new stocks were also furnished by the defendant, and the fitting was done at the blacksmithshop of defendant, usually by the blacksmith's helper, who was also a ''woodworker.'' The defendant kept on hand in its warehouse a supply of these stocks in unbroken bundles or crates, just as they were received from the manufacturer. From time to time, as necessity required, the blacksmith or his helper would obtain the key to the warehouse from defendant's manager or purchasing agent and would take out a crate for use. On or about October 18, 1905, the plaintiff left the cant-hook used by him at the shop to be fitted with a new stock. On going to work on the following morning, the implement was returned to him by the helper, the latter having in the meantime fitted it with a new stock. During the afternoon of the same day, while plaintiff was using it to move a log along a skidway to logging trucks, the stock broke, precipitating him onto the skidway, with the result that he had his leg broken below the knee, and was otherwise bruised and hurt. Hence this action for damages. The ground of recovery alleged in the complaint is that the cant-hook furnished to plaintiff was defective, in that the new stock with which it had been fitted was unsound, insufficient, and unsafe; that of this fact the defendant had knowledge, or, by the exercise of ordinary care, should have had knowledge; that the condition of the cant-hook was not known to the plaintiff; and that, therefore, the defendant, through its negligence in this behalf, failed to use ordinary care

to furnish the plaintiff a reasonably safe appliance with which to do his work.

The answer denies all the allegations contained in the complaint, except the corporate capacity of the defendant, and that the plaintiff was in its employ as alleged. It is then alleged that, if the plaintiff received the injury complained of, it was the result of his own contributory negligence. Upon this allegation there was issue by reply. The trial resulted in a verdict for plaintiff for $800. From the judgment entered thereon, and from an order denying it a new trial, the defendant has appealed. It makes the contention that the evidence is insufficient to justify the verdict, and that the court erred to its prejudice in its rulings upon questions of evidence and in instructing the jury.

It is insisted that the evidence shows conclusively that the defect in the stock of the cant-hook was open and obvious to any person making reasonable use of his senses, and that, for this reason, the verdict of the jury should have been in favor of the defendant, because there was a clear assumption of risk of any danger resulting from its use by the plaintiff. It is sufficient answer to this contention to say that this issue was nowhere made in the pleadings. According to the current of authority, the defense of assumption of risk is affirmative in character, and must be pleaded specially before it can be availed of by the defendant. (*Coulter* v. *Union Laundry Co.*, 34 Mont. 590, 87 Pac. 973; *Nord* v. *Boston & Mont. Con. C. & S. Min. Co.*, 33 Mont. 464, 84 Pac. 1116, 89 Pac. 647; 1 Thompson on Negligence, sec. 368; 6 Thompson on Negligence, sec. 7625; 20 Cyc. 133.)

A like contention is made that the evidence conclusively shows that the injury was the result of the negligence of the helper, a fellow-servant. This defense is of the same nature as that of assumption of risk. It is based upon the principle that one entering upon the service of another assumes the ordinary risks of the employment, among which is included the risk of injuries caused by the negligence of fellow-servants. (*Goodwell*

*v. Montana Central Ry. Co.*, 18 Mont. 293, 45 Pac. 210; *Mielke v. Chicago etc. Ry. Co.*, 103 Wis. 1, 74 Am. St. Rep. 834, 79 N. W. 22; *Baltimore & Ohio R. R. Co.* v. *Baugh*, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772.) It must logically follow, then, that in those jurisdictions, as in Montana, where the rule has been adopted. that the defenses of contributory negligence and assumption of risk must be availed of, if at all, by special allegation, the defendant must in like manner avail himself of the defense that the negligence charged was that of a fellow-servant. (*Duff* v. *Willamette Steel Works*, 45 Or. 479, 78 Pac. 363, 668; *East Tennessee & Pac. Ry. Co.* v. *Collins*, 85 Tenn. 227, 1 S. W. 883; *Layng* v. *Mt. Shasta Mineral Springs Co.*, 135 Cal. 141, 67 Pac. 48; *Ell* v. *Northern Pac. Ry. Co.*, 1 N. D. 336, 26 Am. St. Rep. 621, 48 N. W. 222, 12 L. R. A. 97; *Norfolk etc. R. R. Co.* v. *Houchins*, 95 Va. 398, 64 Am. St. Rep. 791, 28 S. E. 578, 46 L. R. A. 359.)

The general rule applicable to the defense of contributory negligence, as above stated, is subject to the limitation that, if the facts alleged in the complaint show that the servant is at fault, the pleading is open to objection by demurrer. So, also, if the facts proven by plaintiff at the trial raise a presumption of contributory negligence on his part, he may be nonsuited; and this whether the defense is pleaded or not. (*Birsch* v. *Citizens' Electric Co.*, 36 Mont. 574, 93 Pac. 940, and cases cited.) By analogy, the rule requiring assumption of risk and negligence of a fellow-servant to be alleged specially is subject to the same limitation.

Without reference to the question as to how the issue of contributory negligence must be presented, to say that negligence of a fellow-servant may be proved as a defense under defendant's denials, while the assumption of the risk of other dangers must be pleaded specially as new matter, is to make an illogical and unwarranted exception in the application of the general principle that the servant upon entering the particular employment assumes all the ordinary risks incident to it. This question of pleading has never been definitely settled in this juris-

diction. In many cases, of which *Goodwell* v. *Montana Central Ry. Co., supra,* is an example, the defense has been invoked and considered, though no issue on the subject was made in the pleadings. In none of these cases, however, was the attention of the court directed to this condition of the pleadings; all of them having been submitted to this court upon the theory upon which the trial was had in the court below. No case has been called to our attention in which the subject was given attention. It was referred to in *State ex rel. Montana Central Ry. Co.* v. *District Court,* 32 Mont. 37, 79 Pac. 546, but this court refused to decide it because it was not pertinent to the matter involved. A consideration of it is pertinent to this case, because of the contention of counsel for plaintiff that, though the trial court submitted instructions authorizing the jury to find upon the issue, it was not presented by the pleadings, and therefore that the contention of defendant with reference to it cannot avail it in this court. While we think the contention of counsel for plaintiff is correct in the abstract, yet for the reason that the district court, without protest from counsel, adopted the theory that the issue was properly presented by the denials in the answer, it is proper to consider the matter so far as it presents the question of pleading. Since, however, the judgment and order must be reversed for error in the instructions, we shall not consider the contention of defendant further than to say that it was a question for the jury to determine, upon the whole of the evidence, whether it discharged its duty to plaintiff in furnishing a suitable appliance. If it did, of course, it cannot be held liable for any negligence of which the blacksmith's helper was guilty in failing to notify the plaintiff of the alleged defective condition of the cant-hook stock.

The same disposition must also be made of the contention that the evidence shows conclusively that the plaintiff was guilty of contributory negligence. There was evidence tending to show that the plaintiff in attempting to move the log upon which he was working subjected his cant-hook to unusual and unnecessary strain, and that the breaking would not have occurred but for

his negligence in this regard.   Upon this point the evidence
is conflicting, and was properly submitted to the jury.

Some contention is made, also, that, since the evidence shows
that the defendant purchased its supply of stocks from a rep-
utable manufacturer and as of first-class material, the presump-
tion that it had fully performed its duty in respect of furnish-
ing the plaintiff with a suitable appliance must obtain, and
that a new trial should have been granted on that ground.   As
pointed out by Mr. Labatt in his work on Master and Servant
(Vol. 1, sec. 153), it is the general rule that, if an appliance
of an approved pattern has been obtained from a reputable
maker, this fact is *prima facie* evidence that the defendant was
not negligent in requiring his employee to use it.   Some cases,
as appears from the citations in the notes to this work, go so far
as to hold this fact conclusive, and, *a fortiori*, where it appears
that the appliance was submitted to thorough tests before the
sale.   The duty to provide for the safety of the servant is per-
sonal to the master, and cannot be delegated.   Either of the
rules stated by this author is open to the objection that this im-
portant duty has in each case been delegàted to a stranger
against whom, for any negligence of which he may have been
guilty, the servant has no recourse.   This result does not seem
to be reasonable or just.   The better rule, it seems to us, is that
it is a question for the jury, under the rule laid down hereafter,
to determine from the evidence submitted, including the char-
acter of the appliance and the apparent intelligence and experi-
ence of the servant, whether the master has discharged his duty.
This leaves the servant some recourse in case he receives injury
from a defective appliance, and at the same time does not cast
an unreasonably onerous burden upon the master.   Counsel are
mistaken, however, in asserting what the evidence shows as to
the quality of the stocks furnished by defendant.   There was
evidence tending to support their claim.   But the helper tes-
tified that the crate of stocks out of which the one furnished to
plaintiff was taken consisted of culls—that is, stocks of a third-
rate quality—and that the particular one furnished was made

out of the sap of the hickory, and was worm-eaten. Thus there appears a conflict in the evidence, the proper inference from which it was the province of the jury to draw. Under these conditions, the finding of the jury and the judgment of the trial court thereon upon motion for new trial must be accepted by this court as final.

The principal contention made is that the court erred in declaring the rule in the instructions that the defendant was bound absolutely to inspect, or cause to be inspected, the stock of the cant-hook before it was delivered to plaintiff for use. For illustration, we quote paragraph No. 16 of the charge, as follows:

"The court instructs the jury that while it is the duty of the employer to provide reasonably safe, sound and suitable tools and implements with which the employee is to work, the purchase of machinery and appliances of approved quality and kind of a reputable dealer or manufacturer, and reasonable care in inspection for the purpose of discovering obvious defects, is a sufficient discharge of this duty, and the employer is not an insurer of the absolute safety of the tools and implements so furnished, nor is the employer bound to provide the newest or best possible appliances, but only such as are reasonably safe and suitable, and such as are ordinarily used in the country where the service is to be performed; and you are therefore further instructed that if you believe from the evidence in this case that the defendant purchased the cant-hook charged in the complaint to have been defective from a reputable dealer, and used reasonable care in inspection to discover obvious defects, and the same was of the quality and kind such as are ordinarily used by people engaged in the same services, then the defendant is not guilty of negligence, and the plaintiff cannot recover." In a preceding paragraph substantially the same rule is declared.

There is thus presented the question: Is the duty of inspection always present and absolutely binding upon the master, or is it a relative one to be discharged only when the particular machine or appliance furnished, or the special use to be made of it, makes such inspection necessary? The general rule is that

the master owes to his servant the duty to use ordinary care to prevent accident or injury while engaged in his service. This rule includes the requirement to use ordinary care to provide him with reasonably safe and suitable appliances in the performance of his work, reasonably competent fellow-servants, and a reasonably safe place in which to work. Having done this in the first instance, he must also use ordinary care to maintain these conditions. This is the limit of his obligation; and, having discharged it, he is not liable for any injury that may occur. Among the particular duties incumbent upon him is that of inspection of the machinery and appliances to discover defects in them, both at the time of furnishing them and during the course of the employment; for this is the only means by which he may guard the safety of those employed by him in the use of them. It is also a personal duty, and cannot be delegated to another. (26 Cyc. 1332.) But it is not always absolute. It is not the duty of a railroad company or other persons engaged in great industrial enterprises to inspect, much less to test, every tool or appliance put into the hands of an employee. This duty arises only when the appliance is of such a character that a man of ordinary prudence would, under the same circumstances, make the inspection as a precaution against injury to his servant. The master is not required to inspect simple appliances, such as hammers, saws, spades, hoes, lanterns, push sticks, and the like, the character and use of which are understood by all alike. A tool of this class is so simple in its construction and so well understood by men of ordinary intelligence that it would seem absurd to say that the master should make a careful inspection of it before he commits it to the hands of his servant, who has the same capacity to understand its character and uses that he himself has. This was held by the supreme court of Texas to be the rule with reference to a lantern furnished by a railroad company to one of its firemen for use in giving signals. In attempting to clean it, the glass was broken, and the fireman was seriously injured by having the tendons of his wrist cut. The court said: "The only negligence

charged against the plaintiff in error is that it failed to have the lantern which was furnished to the plaintiff inspected before furnishing it, or after it had been furnished, and while he was using it. Inspection is only the means by which the master exercises the care required of him for the servant's protection. It is not the duty of a railroad company to inspect every implement or tool that it furnishes to its employees, but that duty arises whenever the machinery or implement is of such character that a man of ordinary prudence would, under the same circumstances, inspect the machinery or implement as a precaution against injury to the servant. If an individual, being an ordinarily prudent man, would not have inspected the lantern before furnishing it to the servant, or after it had been furnished and while it was in use, then the railroad company was not required to do so in this case. A master is not required to inspect the common tools and appliances which are committed to the custody of the servant who has the capacity to understand their character and uses." (*Gulf C. & S. F. R. Co.* v. *Larkin,* 98 Tex. 225, 82 S. W. 1026, 1 L. R. A., n. s., 944.)

So in *Garnett* v. *Phoenix Bridge Co.* (C. C.), 98 Fed. 192, where a servant was injured through the use of a wrench furnished by the master and which proved to be defective, it was held that the master was not liable. In this connection the court remarked: "The knives of a planing machine, the saws of a sawmill, the revolving wheels of a factory, and many other mechanical devices and accessories are in their nature dangerous, and therefore the employer is justly required to adopt proper measures for the protection of those engaged in and about their operation; but the notion that the conductors of the vast industrial enterprises which distinguish our age and country are deficient in ordinary prudence if they do not take care that none of the many to whom they give employment shall be hurt through the breaking of a handsaw, a hammer, or a wrench is repugnant to common sense and defamatory of the law."

*Miller* v. *Erie R. Co.*, 21 App. Div. 45, 47 N. Y. Supp. 285, was an action brought by a switchman for injuries sustained by

him through the breaking of a push-pole, by which an engine on one track was enabled to push a car on an adjoining track. It was the duty of the plaintiff to put the pole in position. In attempting to move a car by this means, the pole broke, and the plaintiff was injured. A judgment in his favor was set aside. In concluding its opinion the court said: "There is no duty resting on an employer to inspect during their use those common tools and appliances with which every one is conversant. If a spade, a hoe, or push stick either wears out or becomes defective, the employer may ordinarily rely on the presumption that those using the article will first detect its defect." Among others the court cited *Marsh* v. *Chickering,* 101 N. Y. 396, 5 N. E. 56, wherein the rule is stated thus: "As a general rule, it is to be supposed that the master who employs a servant has a better and more comprehensive knowledge as to the machinery and materials to be used than the employee, who has claims upon his protection against the use of defective or improper materials or appliances while engaged in the performance of the service required of him. The rule stated, however, is not applicable in all cases, and, where the servant has equal knowledge with the master as to the machinery used or the means employed in the performance of the work devolving upon him, and a full knowledge of existing defects, it does not necessarily follow that the master is liable for injuries sustained by reason of the use thereof." In this case the action was brought for alleged negligence on the part of the defendant in not furnishing a suitable ladder for the use of plaintiff in lighting lamps in front of defendant's building.

In *Cregan* v. *Marston,* 126 N. Y. 568, 22 Am. St. Rep. 854, 27 N. E. 952, it was held that the master had fully discharged his duty to his employees when he had furnished suitable appliances for unloading coal from vessels, and suitable materials for repairs rendered necessary from time to time, but not requiring the services of skilled mechanics.

In *O'Brien* v. *Missouri, K. & T. Ry. Co.,* 36 Tex. Civ. App. 528, 82 S. W. 319, the plaintiff, in the employ of defendant,

having use for a wrench for tightening the nuts on the steam-chest on one of its locomotives, and it not being convenient to secure a suitable one from plaintiff's toolbox, sent his helper to get one from defendant's roundhouse, which he did. The one secured was defective. In affirming a judgment for the defendant the court used this language: ''The wrench seems to have been a simple tool, and we are of the opinion that the defendant might assume that employees using such a tool would discover a defect resulting from its being worn out.'' A like conclusion was reached in *Wachsmuth* v. *Shaw Electric Crane Co.*, 118 Mich. 275, 76 N. W. 497: ''In heavy or complicated machinery, and where the person called upon to use the appliance may not possess the skill to detect unfitness or the opportunities to do so, the law may require diligence upon the part of the master; but, where the appliance is a common tool, of which the man who uses it is necessarily well qualified to judge, when he uses it, has an opportunity to know its condition, a distinction may be made, and the master may rely upon the servant to inform him of the defect, or not use the tool if it is unsafe.'' (See, also, 1 Labatt on Master and Servant, sec. 161.)

Tested by the rule announced in the cases cited, the court was in error in the instruction quoted above in declaring the duty of inspection absolute. We think the correct rule to be as stated in *Gulf, C. & S. F. R. Co.* v. *Larkin*, 98 Tex. 225, 82 S. W. 1026, 1 L. R. A., n. s., 944, that this duty arises when the character of the appliance is such, taking into consideration the intelligence and experience of the employee, that a reasonably prudent man under like circumstances would deem the inspection necessary in order to guard against injury to one of his employees about to make use of it. The question presented here is analogous to that which arises when the servant is a minor. Ordinarily, in such cases whether the obligation to instruct was incumbent upon the master is not a question of law for the court, but one of fact for the jury upon the evidence submitted. (*Forquer* v. *Slater Brick Co.*, 37 Mont. 426, 97 Pac. 843.) The instruction

is erroneous, and for this reason the judgment and order must be reversed.

We are aware that a different conclusion has been announced by other courts in cases in which the facts bear great similarity to those presented by this case.   Of these cases *Baltimore & Ohio etc. R. Co.* v. *Amos,* 20 Ind. App. 378, 49 N. E. 854, and *Louisville etc. R. Co.* v. *Roberts,* 24 Ky. Law Rep. 1160, 70 S. W. 833, are examples.   But any other rule than that announced here would, it seems to us, result in great hardship and inconvenience to all those engaged in industries where the employees are required to use only simple appliances which do not involve in themselves the element of danger.

Error is assigned upon the refusal of the court to submit to the jury refused instructions Nos. 17 and 19.   There is no merit in these assignments.   The latter is fully covered by the charge given.   The former we do not regard as a correct statement of the law applicable to this case, but deem it unnecessary, in view of what has already been said, to make special comment upon it.

We find no error in the rulings on questions of evidence.

The judgment and order are reversed and a new trial ordered.

*Reversed and remanded.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.