Hulien vs. Chicago & Northwestern R. Co.

Hulien, Administratrix, Appellant, vs. Chicago & North-western Railway Company, Respondent.

*April 30 — May 15, 1900.*

*Railroads: Injury causing death of engineer: Repairing engine: Failure to give warning: Collision: Contributory negligence.*

While a train was standing on a sidetrack within a few car lengths. of another train headed in the opposite direction, the engine of which was engaged in switching, the engineer, without setting the brakes or giving any signal or warning of any kind either to his. own crew or to the crew of the other train, crawled under his engine for the purpose of making repairs and remained there a considerable length of time, until the rear end of his train was struck by the other train and his engine impelled forward several feet, fatally injuring him. Before going under the engine the engineer knew that his fireman was at work in such a position that it would be practically impossible for him to see any movement of the other train or signal to its crew. *Held,* that the deceased was guilty of contributory negligence precluding a recovery by his personal representative.

Appeal from a judgment of the superior court of Milwaukee county: Orren T. Williams, Judge. *Affirmed.*

The plaintiff sues as administratrix to recover for the death of Charles Hulien, her husband, which occurred August 3, 1894, at a station called Wittenberg, in Shawano county. The deceased was a locomotive engineer, and was employed as such by the defendant at the time of his death, and had been so employed for eight or nine years previously. Upon the day of his death he was operating an engine attached to freight train No. 43 upon the defendant's road. This train was going north, and had arrived at Wittenberg at about 9 o'clock a. m., and pulled in upon the passing track at said station, which was located east of the main track. There was another side track at said station, west of the main track, which was used for loading and unloading freight cars. Shortly after train No. 43 pulled in upon the

passing track, freight train No. 50 arrived at the station from the north, and passed down on the main track, and backed in from the south upon the passing track, and stopped with its caboose two or three car lengths south of the rear end of freight train No. 43. These two freight trains were waiting upon the passing track for the regular passenger train going south to pass upon the main track. While thus waiting, the engine attached to train No. 50 was detached from the train, with several cars, and commenced to do switching upon the west side track. While so engaged, the passenger train came in and went south. Soon after the arrival of train No. 50, the deceased left the cab of his engine, taking his fireman with him, and got down upon the east side of his engine, and went under the engine for the purpose of tightening the wedge which holds the driving box in position; his fireman at the same time being engaged in tightening a jam nut upon the east side of the engine. Upon leaving the cab, the deceased did not set the brakes upon his engine or upon the train, although six or seven of the forward cars had air brakes connected with the engine; nor did the deceased or his fireman notify any of the train crew that the engineer was going under the engine, nor did they notify any of the crew of train No. 50 of that fact, nor was any signal placed at the rear end of train No. 43. After the deceased had been under his engine some five minutes (the passenger train having in the meantime passed south), the engine of train No. 50 backed in again upon the passing track with some cars, and backed against the other part of train No. 50, which had been left upon the passing track, and backed up so far that the caboose was forced against the caboose of train No. 43, impelling it forward some ten or twelve feet, and fatally injuring the deceased, who was still under his engine, from which injuries the deceased died in a few hours.

A number of rules of the defendant company were put in

evidence, among which was rule 74, which reads as follows: "(74) A red flag by day and a red light by night, placed on the end of a car on side track, denotes that car inspectors are at work under the car or train. The car or train thus protected must not be coupled to or moved until the red signal is removed by the car inspectors. When a car or train standing on a siding is protected by red signals, other cars must not be placed in front of it, so that the red signal will be obscured, without first notifying the car inspector, that he may protect himself. This rule applies to trainmen, switchmen, or other employees who are under cars or engines, inspecting, repairing, or chaining up."

These facts appearing by the plaintiff's testimony, a motion for nonsuit was granted, and from judgment thereon plaintiff appeals.

For the appellant there was a brief by *J. W. Wegner* and *Timlin, Glicksman & Conway*, and oral argument by *Mr. Wegner*.

For the respondent there was a brief by *Fish, Cary, Upham & Black*, attorneys, and *Edward M. Hyzer*, of counsel, and oral argument by *John T. Fish*.

WINSLOW, J. We shall consider but one question in this case, and that is the question as to whether the plaintiff's intestate was guilty of contributory negligence. Upon this question the material facts are that while his train was standing on the passing track, with another train standing within two or three car lengths, whose engine was engaged in switching, the deceased left the cab of his engine with his fireman, and crawled under his engine for the purpose of tightening the wedge which holds the driving box in position, the fireman being engaged at the same time in tightening a jam nut. Before going under the engine he did not set the brakes of his engine or train, although six or seven cars on the forward end of the train had air brakes

connected with the engine. He notified none of the train crew of his own train, save the fireman who was assisting him; he gave no warning to the crew of the other train. He placed no flag or warning at the end of his train, and he placed himself in a spot where he could see nothing of the movements of the train in his rear. He placed his fireman upon the east side of the engine, where it was practically impossible for him to see any movement of the other train, or signal to its crew. While in this situation his train was moved forward by the impact of the train in the rear, and he was killed. It may be assumed, for the purposes of the case, that the employees on the other train were negligent in allowing their train to strike and move the intestate's train, and it may also be assumed that the intestate, while tightening the wedge, was engaged in "operating" his engine, within the meaning of ch. 220, Laws of 1893 (sec. 1816, Stats. 1898), although these points are not decided, and no opinion is intimated upon either of them; and still, if it conclusively appears that the deceased was guilty of contributory negligence, the plaintiff cannot recover. Upon the facts stated, we are convinced that it must be said as matter of law, that the deceased was negligent in going under his engine as he did, irrespective of any rule. Rule 74, which is set forth in the statement of facts, simply emphasizes the negligence and makes it more glaring. The mere statement of the facts seems the most convincing argument. Common sense must say that an engineer who thus goes under his engine, and remains there a considerable time, leaving the brakes unset, with no signal or warning of any kind, while another engine is operating on the same track in close proximity, takes his life in his hand. To say that such conduct is ordinary care, or that it may become such by proof that others have done it and escaped with their lives, is to part company with reason. The nonsuit was right.

*By the Court.*— Judgment affirmed.