JACOBY, Appellant, vs. CHICAGO & NORTHWESTERN RAIL-
WAY COMPANY, Respondent.

*November 12—November 27, 1908.*

*Railroads: Injuries to employees: Contributory negligence.*

In an action for injuries received by a car-repairer while repairing
a car, by reason of the negligent operation of an engine upon
the same track, the plaintiff is *held*, upon the evidence, to have
been guilty of contributory negligence.

APPEAL from a judgment of the circuit court for Brown
county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

This action is brought to recover damages for an injury
sustained by the plaintiff while engaged in repairing a car
that was out of order. The alleged negligence of the defend-
ant consisted in moving an engine upon the track on which
the car stood that was being repaired, without any warning
or precaution, whereby said car was suddenly moved, and
plaintiff, in consequence of such movement, was injured. It
was also alleged that defendant was negligent in failing to
provide any protection against the negligent moving of the
engine, and in failing to supply plaintiff with means of
protecting himself, and in failing to warn the plaintiff that
the track upon which the car was being repaired would be
used in operating the engine which caused the accident. At
the close of the testimony the court directed a verdict in
favor of the defendant, and from a judgment entered upon

such verdict dismissing the complaint plaintiff brings this appeal.

For the appellant there was a brief by *Wigman, Martin & Martin,* and oral argument by *P. H. Martin.*

*Edward M. Hyzer,* for the respondent.

BARNES, J. At the time of the accident plaintiff was twenty-two years of age. He had worked around engines, helping machinists and doing other light work, for about four years before he was injured. He had commenced work as a car-repairer about two months before he was hurt. Before commencing work as a car-repairer he was advised of a notice and rule of the defendant company which read:

"Special Notice.

"To foremen and car-repairers:

"Car-repairers, inspectors, and other employees of this department, who have occasion to work on or about cars, are strictly forbidden to commence work on any car, the nature of which might require them to place themselves in a position on, under, or about the car, where its movements on the track could result in injury to them, without first properly protecting said car, as provided in rule 26, Rules and Regulations Operating Department.

" 'A blue flag by day and a blue light by night displayed at one or both ends of an engine, car, or train indicates that workmen are under or about it. When thus protected it must not be coupled to or moved. Workmen will display the blue signals, and the same workmen are alone authorized to remove them. Other cars must not be placed on the same track, so as to intercept the view of the blue signals, without first notifying the workmen.'

"Any employee disobeying the above order will be liable to immediate discharge.

"Foremen are instructed to enforce the above order rigidly, and to keep a supply of blue flags and blue lanterns for that purpose constantly on hand.

"Foremen are also instructed to provide each of their car-repair men with a copy of this notice, to explain it carefully to them, and to procure their acknowledgment thereof on this blank and forward the same to my office immediately."

On April 19, 1905, he signed a statement to the effect that the rule had been read and explained to him and a copy of it left in his possession, and that he agreed to carefully observe the instructions contained therein. About May 9th plaintiff and one Squares were sent from Kaukauna to Port Washington to repair cars used about the gravel pit at that place. Plaintiff was to act as assistant to Squares or such other persons as might be sent to replace him. Before leaving they made a request upon the proper official for blue flags so that they might protect themselves while at work, as provided by the rules above set forth. They were told to proceed and that the blue flags would follow. No flags were furnished until about one week before the accident, and then but two flags were in fact sent. The plaintiff had been at work at Port Washington four weeks before he was injured. During the first two weeks he was engaged principally in putting stakes in cars, which work did not necessitate his placing himself in such a position that he could not observe the movements of the engines and cars upon the side-tracks adjacent to the gravel pit, at which about 250 men and two steam shovels were employed. During the next week and up to the time the blue flags arrived, the plaintiff and the car-repairer whom he was assisting repaired damaged cars in various parts of the yard, and protected themselves by one keeping a lookout while the other was in such a position that he could not observe the movement of engines or cars that might endanger his safety. During the week that elapsed after the two flags were received, plaintiff and his colaborer protected themselves by means of the flags. So long as the two men worked upon cars on a single side-track the two flags furnished ample protection if the signals were obeyed. If they worked upon different tracks, it is manifest that one or the other of them could not be protected by means of the flags. It does not appear that after the flags had been received, up to the morning the accident happened, these two men had occasion to,

or in fact did, work upon different tracks in making their repairs.    On the morning of the accident plaintiff and his fellow car-repairer and boss did some work on certain cars that were protected by the flags in question. After plaintiff got through he was instructed to repair a car standing upon a side-track about eighty feet from where he and his fellow car-repairer, Keller, were at work.    There were five or six tracks between the track upon which plaintiff had been working and that upon which he was directed to work, and there was a string of cars standing on one of the intervening side-tracks which obscured Keller's view of the car upon which plaintiff was directed to work, although Keller could see an engine entering upon the switch track upon which the car in question stood.    Keller had also completed his work when he directed plaintiff as stated, although it does not appear that plaintiff knew this to be the fact.    Plaintiff made no inquiry as to whether or not he might take the flags or as to how he would be protected while doing his work.    After sending plaintiff to repair the car upon which he was injured, Keller went to another part of the yard to do some work, but did not use the flags.    It is perfectly apparent that plaintiff might have taken the flags if he so desired, although he may have thought that Keller had use for them.    The repair that plaintiff was directed to make consisted simply of replacing a lost nut on a bolt, and it is fair to assume that neither Keller nor the plaintiff thought the job would consume much time, not so much but that the plaintiff, by ascertaining that the track was clear before beginning his work, might complete it before an engine could approach and the switch be thrown so as to permit the engine to come upon this particular track.    Plaintiff found, however, that the thread on the bolt was badly worn, and he had been trying for about ten minutes to make the repair when the car on which he was working was struck.    The plaintiff testified that he "kind of depended" on Keller to watch for him; that he knew

Keller was some distance away and could not see him, but he trusted him a little bit anyway; that he expected Keller and himself to do the watching; that he thought it possible that some train might come in, so he was listening, and that he knew it was dangerous; that he expected putting on the nut would be a short job. When he went over he expected it would go quicker.

It is difficult to escape the conclusion that the plaintiff was guilty of contributory negligence in this case. When he discovered that his work would take more time than he anticipated and that he was not in a position where he could properly safeguard himself, it was his duty to either procure the flags and protect himself thereby, or advise his fellow-workman of the conditions which he found and request him to keep a lookout and warn him of the approach of an engine on the track upon which he was at work. He had little reason to suppose that Keller was paying any attention to him. If he considered the work he was called upon to do of such a character in the first instance that he could not look out for himself, it was still his duty to ask for the use of the flags, and, in the event of the refusal of Keller to permit him to use them or to keep a lookout while he was at work, to decline to do the work until he was properly protected in some manner. He knew the work was dangerous and that the rules of the company explicitly prohibited him from doing the very thing he did do. We do not mean to countenance the idea that the defendant could make rules requiring the use of flags and refuse to furnish them, and then claim immunity because of the rule. Flags, however, were furnished, sparingly it is true, but enough, so long as the two men worked upon the same side-track. The plaintiff did not request the use of these flags. If he had so requested, it is apparent he could have taken them. Neither did he request his fellow-servant to keep a lookout. He failed to use means that were at hand for his protection, and

means that reasonable prudence on his part would require him to take advantage of. The plaintiff knew the hazard he was subjecting himself to, and that he was not asked or expected by his employer to assume it, but, on the contrary, was forbidden so to do. The contributory negligence of the plaintiff is fully as apparent in this case as was the negligence of the decedent in *Hulien v. C. & N. W. R. Co.* 107 Wis. 122, 82 N. W. 710, and the trial court was right in directing a verdict for the defendant.

*By the Court.*—Judgment affirmed.