LUDVIGSON, Respondent, vs. SUPERIOR SHIP BUILDING COMPANY, Appellant.

*September 14—October 3, 1911.*

*Appeal: Exceptions to rulings at trial, when to be taken: Extending time: Master and servant: Injury to servant: Contributory negligence: Knowledge of incompetency of fellow-servant: Instructions to jury: Harmless errors: Damages.*

1. Exception to the refusal of the court to submit particular questions in a special verdict must be taken at the time of the trial.
2. Sec. 2831, Stats. (1898), has no application to an omission to take timely exception to a ruling of the court during trial. *Henrizi v. Kehr*, 90 Wis. 344, and *Dickinson v. Smith*, 139 Wis. 1, distinguished.
3. In an action for injury to a servant, an instruction making his contributory negligence depend upon what "he then knew" as

to the incompetency of a fellow-servant, omitting the phrase, "or by the exercise of ordinary care ought to have known," is *held* not prejudicially erroneous where the employment was simple and plaintiff probably knew or did not know of such incompetency, depending largely upon his opportunity or need for observation, and the jury were required to take this fact into consideration.

4. Findings that the fellow-servant was incompetent and that plaintiff did not know of such incompetency, are *held* to be sustained by the evidence.

5. An award of $5,000 to a man fifty-eight years of age and earning $1.75 per day, for permanent injuries to his left leg and right foot, though considered large, is sustained. MARSHALL, J., dissents.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Affirmed.*

On February 24, 1910, defendant was engaged in excavating earth in a portion of its ship yard and in moving the same from where it was dug to a dump near by. In carrying on such work defendant made use of a certain hoisting apparatus and appliances, consisting of an engine, derrick, boom, drum, and cable, and certain other apparatus used in connection therewith. The work was accomplished by the lowering of a steel box or skip, which was fourteen or fifteen inches high by four or five feet in length. The skip, when filled by workmen at the place of excavation, was raised and carried off by means of the derrick and boom, drum, and cable, operated by the engineer. Two men were employed by the defendant at the place where the earth was dumped or emptied from the skip, for the purpose of unhooking the chains so that it might be tipped and emptied. The defendant also employed a signalman, who was stationed in the vicinity where these operations were carried on, and charged with the duty of signaling the engineer in managing the skip and of warning the men at the excavation and on the dump of its movement so that they could get out of its way. On said 24th day of February, 1910, plaintiff was working about said

dump engaged in shoveling and moving earth, under defendant's directions. While so engaged in his work the skip was, without signal or warning, lowered and swung against him, resulting in the fracture of his left leg in two places and in an injury to the instep of his right foot.

The jury, by special verdict, found (1) that plaintiff was injured, while in defendant's employ, by a loaded box descending and striking him; (2) that no warning or signal of the descent of said box was given plaintiff by the signalman; (3) that the signalman was not a competent man to perform his duties at the time of the accident in question; (4) that plaintiff had no knowledge that the signalman was incompetent; (5) that defendant, in the exercise of ordinary care, ought to have known that the signalman was incompetent; (6) that the incompetency of the signalman was the proximate cause of plaintiff's injuries; (7) that plaintiff was not guilty of any lack of ordinary care that contributed proximately to produce his injury; and (8) damages, $5,000.

Defendant's motion to change the answers to questions 3, 4, 5, 6, 7, and 8 was denied, and from a judgment entered upon the verdict it appealed.

For the appellant there was a brief by *Hanitch & Hartley,* and oral argument by *Louis Hanitch.*

*W. P. Crawford,* for the respondent.


VINJE, J.     Error is assigned because the court refused to submit two questions in the special verdict requested by the defendant.     No exception to such refusal was taken until after verdict and before judgment.     The exception came too late.     It must be taken at the time of the trial in order to be considered upon appeal.     *Ward v. Busack,* 46 Wis. 407, 1 N. W. 107; *Schultz v. C., M. & St. P. R. Co.* 48 Wis. 375, 4 N. W. 399.     Sec. 2831, Stats. (1898), has no application to the omission to take a timely exception to the ruling of the court during trial, and the case of *Henrizi v. Kehr,* 90 Wis.

344, 63 N. W. 285, permitting an exception to a finding of fact to be made after the statutory time had expired, and the case of *Dickinson v. Smith,* 139 Wis. 1, 120 N. W. 406, allowing a defective undertaking to be amended after the expiration of a year, cited by defendant, do not relate to the question, as the relief in each case was granted pursuant to sec. 2831, Stats. (1898).

Upon the question, "Was plaintiff guilty of lack of ordinary care that contributed as proximate cause to produce the injury?" the court instructed the jury as follows:

"Ordinary care in a given case is such care as the great mass of mankind ordinarily exercise under the same or similar circumstances. In passing judgment upon plaintiff the jury is instructed that he stands or falls according as his conduct was careful or careless viewed in the light that he had. If he then knew that the signalman was incompetent and nondependable, it was upon him to govern himself accordingly. Does his conduct considering all the circumstances of the case, the knowledge or want of knowledge he had, accord to ordinary care? Here the burden is upon defendant to prove the affirmative of said question 6 by preponderance of evidence and to reasonable certainty. The jury is instructed that if plaintiff fell short in however slight degree to exercise ordinary care as defined, the question should be answered in the affirmative, otherwise in the negative."

It is claimed this instruction was erroneous because it confined plaintiff's contributory negligence to what he then knew, and did not include what he ought to have known by the exercise of ordinary care. The only instruction requested by the defendant upon the question of contributory negligence was, "You are instructed that if the plaintiff failed to exercise ordinary care, however slight that failure may be, which contributed to his injury, then you must answer this question Yes." This requested instruction the court gave in substance. Undoubtedly the correct instruction would have been: If the plaintiff then knew, *or by the exercise of ordi-*

*nary care ought to have known,* that the signalman was incompetent, etc. But, under the circumstances of this case, we deem the error in the instruction as given not to be so prejudicial as to necessitate a reversal of the case. The qualifying phrase, "or by the exercise of ordinary care ought to have known," would have had but slight, if any, application to the facts to be considered by the jury. Plaintiff was engaged in a simple employment, that of moving earth, and it is probable that in the ordinary prosecution of that work he would either have known of the signalman's incompetency or would not have known of it, depending largely upon his opportunity or necessity for observance. This fact the jury were required to take into consideration.

Upon the oral argument it was claimed by defendant that the signalman was so notoriously incompetent that the plaintiff must have known of his incompetency and assumed the risk incident thereto. Such claim is based upon the fact that plaintiff produced seven or eight witnesses who testified that the signalman was careless, that he did not always give signals when the skip was lowered, and that he would omit to give signals three or four times a day, or more. It is certain that at the time of the trial the defendant did not accept such testimony as true, for it introduced at least five witnesses who testified that the signalman was a careful, competent man not only while in the employ of the defendant, but for the period of two years previously while he had been employed by others in Superior and Duluth discharging similar duties. In view of such conflict in the testimony it can hardly be said that there was no question of fact for the jury to determine as to whether or not the signalman was competent. Nor is their finding that he was incompetent, and that the plaintiff did not know of such incompetency, unsupported by the evidence, when it is borne in mind that plaintiff had been in the employ of the defendant for only three weeks before he was hurt, and that most of the time he had been at work in a place where

Ludvigson v. Superior Ship Building Co. 147 Wis. 34.

he was not required to pay any attention to the signalman. The whole time he had worked where it was necessary to heed the signals was only about three days. So the most that can be said is that there was room for conflicting inferences as to plaintiff's contributory negligence. Under such circumstances it was peculiarly a question for the jury, and their finding in favor of plaintiff cannot be disturbed.

Is the assessment of $5,000 damages excessive? At the time of the injury plaintiff was fifty-eight years old and earning $1.75 per day. His left leg was fractured in two places between the knee and hip, resulting in a permanent shortening of the leg of two inches. The bones in the instep of his right foot were fractured, and the arch of the foot was destroyed, so that the foot was flattened, and it drags when he walks. The front part of it is beyond control, and the injury is a permanent one, and is always accompanied with considerable pain. He was in the hospital five months, continuously, after the injury, eight weeks of which he was confined to bed. The pain was continuous and severe during all that time. In view of such an injury, we cannot say the damages assessed were so excessive as to warrant this court in reducing them, though we should have been better satisfied with the assessment of a smaller sum.

*By the Court.*—Judgment affirmed.

MARSHALL, J. (*dissenting*). I would not disturb the result complained of as to the right of respondent to recover, but the amount awarded seems far too large. I do not think we, as an original matter, would make anywhere near so large an award. It is larger than the precedents justify, larger than the logic of our most recent adjudications will support, and has no sound basis in the evidence, as we shall see.

The Code expressly provides a remedy in such cases. Too bad that the wise provision, though appreciated for a time, later became confused, as I think, with the ancient idea that

only where an excessive award is characterized by passion or prejudice should the court interfere because of excessiveness. That was one of the infirmities of the old system which the Code makers attempted to cure in providing,—in addition to the remedy for a finding being contrary to the evidence, which includes being characterized by passion or prejudice,—the remedy for excessiveness only—excessiveness from mere mistake or inadvertence or other cause not involving any actual or constructive ulterior motive. The writer discussed this subject in *Monaghan v. Northwestern F. Co.* 140 Wis. 457, 122 N. W. 1066. It is a hopeful sign that this court, in respect to the clause of the Code under consideration, has recently evinced inclination to give effect to it. It is difficult, I confess, to do so fully, in view of the numerous statements in opinions running back years, out of harmony therewith. But no more difficult than the task of restoring other features of the Code which has most efficiently and happily been accomplished. Is there any sound reason why a verdict which is plainly too large should not be reduced without basing action in that regard on the jury having been actually or constructively dishonest in the matter,—actuated by some improper motive? The court has several times answered that in the negative as will be seen in the cases cited in *Monaghan v. Northwestern F. Co., supra.* It did so very recently in *Willette v. Rhinelander P. Co.* 145 Wis. 537, 130 N. W. 853.

The respondent was fifty-eight years old. His expectation of life was about sixteen years. He was an ordinary laborer earning $1.75 per day. The evidence all goes to show that he will recover so as to be able to do common labor, substantially as before. Yet the jury awarded him $5,000, or equivalent to an annuity of $1.35 per working day as long as he lives. In *Willette v. Rhinelander P. Co., supra,* the plaintiff was forty-five years of age. His monthly earnings were more than in this case. His working capacity was impaired nearly as much as respondent's, but he was not ill so long and did not

suffer as much. This court cut the award from $4,500 to $2,250. According to the logic of that case and settled principles that the recovery should only be adequate to repair pecuniary loss, so far as human judgment, aided by reason and applied to the evidence, can determine the matter, an award equal to an annuity of two fifths of respondent's earning power at the time of the injury, or about $2,500, would be as high as this court should leave the recovery. *Baxter v. C. & N. W. R. Co.* 104 Wis. 307, 80 N. W. 644; *Rueping v. C. & N. W. R. Co.* 116 Wis. 625, 93 N. W. 843; *Willette v. Rhinelander P. Co.* 145 Wis. 537, 558, 130 N. W. 853.

I am in favor of reversing the judgment solely on the ground of excessiveness, with the privilege of respondent to take judgment for the less sum indicated.

BARNES, J., took no part.