GUNSTEN, Appellant, vs. GREEN, Respondent.

*April 11—April 29, 1913.*

*Sale of horses: Fraud: Intoxication: What horses included: Evidence: Value: New trial: Newly discovered evidence: Special verdict: Form.*

1. Findings by the jury that a sale of nine horses by defendant to plaintiff did not include the three horses for nondelivery of which the action is brought; that when he signed a note for the price and a chattel mortgage of the horses purchased, plaintiff was not so intoxicated as to be incapable of understanding the transaction; and that he knew, at the time, what horses were described in the mortgage, are *held* to be sustained by the evidence.

2. Where the parties to a sale of horses differed in their testimony as to what horses were included therein, evidence as to the value of the horses was admissible.

3. A motion for new trial on the ground of newly discovered evidence is properly denied where the alleged new evidence is merely cumulative and furnishes no substantial ground for believing that, had it been presented to the jury at the trial, a different result would have been reached.

4. The form of a special verdict is largely in the discretion of the trial court, and it is sufficient if it covers the material issues in such a way as to resolve all disputes in respect to them.

APPEAL from a judgment of the circuit court for Portage county: A. H. REID, Judge. *Affirmed.*

This is an action to recover damages for the nondelivery of three horses which the plaintiff alleges he bought of the defendant, but never received. The defendant alleged by way of counterclaim that there is due him from plaintiff $700 on a note, and seeks to foreclose a chattel mortgage held by him to secure payment of this sum.

The defendant was a horse dealer operating in and about Stevens Point, Wisconsin, and other places. The plaintiff is a farmer living near Amherst, Wisconsin. The defendant had a barn and an agent at Amherst, where some of his horses were kept, and while there they were in charge of his agent, one Orrin Loomis. It appears that the horses kept at

this barn were charged to Loomis, and when he sold them the proceeds, after the original cost was deducted, were divided between Loomis and *Green.*

On May 26, 1911, the plaintiff, *Gunsten,* came to Amherst and went to defendant's barn on the afternoon of that day, and while there he looked at some horses described by him as follows: a gray mare, weight about 1,300 pounds, about five years old; two bay geldings, weight about 1,400 each, four and five years old respectively. Orrin Loomis told the plaintiff that these horses were the property of himself and *Green* and that they were for sale. The next morning, between 7 and 8 o'clock, the plaintiff returned to the barn, when *Green* told him that Loomis could no longer work for him because he drank and that he was going to sell everything in the place and end their business relation. The plaintiff and *Green* then negotiated as to the value of the horses in the barn and those in the pasture back of the barn, and a deal was finally consummated by which the plaintiff purchased nine horses from *Green.* Some of the horses which plaintiff claims were in the barn the night before and included in the purchase were not delivered to him by *Green,* who claims they were not included in the sale. *Green* made a memorandum of the nine horses sold to plaintiff, with the cost price of each, and delivered it to the plaintiff. It was agreed that plaintiff was to pay $700 for the horses.

Later in the day, about 1 or 1:30 o'clock, the plaintiff and Loomis, both of whom had been drinking considerable, were seated in a saloon, when *Green* entered and requested the plaintiff to sign a check for $700, which the plaintiff refused to do. *Green* then drew up a judgment note and a chattel mortgage describing the horses, which the plaintiff signed. The defendant seeks to recover on this note and mortgage upon his counterclaim.

Plaintiff claims and alleges that the horses mentioned in the chattel mortgage are not the same as those he purchased;

that *Green* knew at the time he signed the note and mortgage that he was intoxicated and took advantage of it to defraud him; that he never received three of the horses which were in the barn when he first went there and which were included in his purchase.

Defendant claims that the three horses plaintiff now claims were not included in the sale, but that three other horses, which plaintiff refuses to accept, were included and delivered to the plaintiff. The three horses which the defendant avers were included in the sale are described in the memorandum and in the chattel mortgage. Defendant testified they were fully described to the plaintiff as follows: a stallion, which Loomis had bargained to one Krostue, a nephew of the plaintiff, at the agreed price of $300, $150 of which had already been paid, but that the sale was not to be consummated until the balance was paid, which the plaintiff was to collect; a brown mare then in the possession of a man at Amherst who had her on trial, and if he bought her was to pay $150, otherwise she was to be returned to plaintiff (the defendant further alleges that she was in fact returned to the barn and to the plaintiff); a little black horse delivered to plaintiff, which he allowed Loomis to sell.

It appears that the defendant recovered but two of the horses through the foreclosure of the chattel mortgage and that these were sold for $125, and the proceeds, after deducting the costs, were applied on the plaintiff's note, and that the balance on the note remains unpaid, for which the defendant was awarded judgment on his counterclaim with costs.

The findings of fact by the jury are as follows: (1) that the nine horses sold to the plaintiff did not include the two bay geldings and the gray mare as claimed by the plaintiff; (2) that the plaintiff, *Gunsten,* was not so completely intoxicated at the time of signing the note and the chattel mortgage that he was incapable of understanding the transaction and the contents of the note and mortgage; (3) that the plaint-

iff, at the time of signing such instruments, knew what horses were described therein. Upon these findings the court awarded judgment dismissing the plaintiff's complaint and gave to the defendant judgment on his counterclaim for the amount due on the note and his costs of action in the sum of $763.96. Plaintiff moved the court for judgment notwithstanding the verdict, and in the alternative to set aside the answers to questions in the special verdict and for judgment, or for a new trial on the minutes of the court or on the grounds of newly discovered evidence.

This is an appeal from the judgment dismissing the complaint and awarding judgment on defendant's counterclaim and from the order denying a new trial.

For the appellant there was a brief by *E. L. & E. E. Browne* and *Lloyd D. Smith,* and oral argument by *Mr. Smith.*

For the respondent there was a brief by *Fisher, Hanna & Cashin,* and oral argument by *W. E. Fisher.*

SIEBECKER, J. The main issue presented by the plaintiff's complaint and the answer thereto is, Did the sale of nine horses by the defendant to the plaintiff include the three horses the plaintiff now claims and which were not delivered to him? This issue was specifically submitted to the jury by questions 1 and 3 of the special verdict. The jury found against the plaintiff upon this issue. An examination of the evidence material to this question discloses that there is a conflict in this evidence and the court properly submitted this controversy to the jury for determination. In the light of the evidence on this question the jury's findings cannot be disturbed. It cannot be said that such findings are against a clear preponderance of the evidence and that the trial court's action was clearly wrong. It is furthermore contended that the court erred in overruling defendant's motion for a new trial upon newly discovered evidence on this question as to whether or not the horses plaintiff now claims were

included as three of the nine horses he purchased from the
defendant.   We have examined the alleged new evidence and
find it wholly fails to establish a ground for a new trial.   It
is obvious that it is cumulative evidence on the issue tried and
that it furnishes no substantial grounds for believing that
had this evidence been presented to the jury at the trial a
different result from the one expressed in their verdict would
have been reached by them.   The exception to the court's
ruling permitting the defendant to testify to the value of the
horses included in the sale is without merit.   The evidence
was proper in view of the plaintiff's evidence as to what horses
he understood were included in the $700 purchase price and
as to what interest Loomis had in the horses under an arrange-
ment with the defendant.

It is argued that defendant perpetrated a fraud on the
plaintiff by colluding with Loomis to induce plaintiff to sign
a judgment note and chattel mortgage while plaintiff was in
a state of intoxication.   The note plaintiff signed was for
$700, due in thirty days.   It is conceded that the amount is
correct and that it runs for the period agreed upon by the
parties.   The chattel mortgage is in the usual form, given to
secure payment of this note, and covers nine horses, describ-
ing them.   The defendant testifies that the horses described
therein are the nine horses sold to the plaintiff; that the
plaintiff took actual possession of seven of them at the time
of the sale and that the remaining two horses were in the
hands of persons who had bargained for them; that the terms
of their sale were explained to and understood by the plaint-
iff; and that he bought them under the arrangements for their
sale to the persons in whose possession they then were.   The
facts and circumstances and the evidence of Loomis sustain
the claim of defendant as to the terms and condition of the
sale.

The jury found that the chattel mortgage correctly de-
scribes the horses purchased by the plaintiff at the time in

question.   The evidence amply sustains the jury's findings that plaintiff was capable of fully understanding and appreciating the contents of the note and mortgage and that he knew what horses were described in the mortgage when he signed it.   In the light of all these facts, there is no room for argument upon the question as to whether the defendant participated in bringing about plaintiff's intoxication and wrongfully took advantage thereof by inducing plaintiff to sign these instruments and thereby perpetrated a fraud on him. Nor can it be said that the court committed error in submitting the special verdict in the form he did, as to the question of fraudulent and wrongful conduct to induce the plaintiff to execute the note and mortgage while in a state of intoxication.   The verdict covers these questions sufficiently to resolve all disputes in respect to them.   The record shows that the parties had a fair trial, that the issues were fully presented to the jury, that they determined all material issues by their special verdict, and that the court committed no error affecting any substantial rights of the appellant.

*By the Court.*—The judgment appealed from is affirmed.