DOLPHIN, Respondent, vs. PEACOCK MINING COMPANY, Appellant.

*December 11, 1913—January 13, 1914.*

*Master and servant: Injury to miner: Negligence: Unsafe working place: Fall of rock: Contributory negligence: Duty of inspection: Customary methods: Changing working place: Evidence: Credibility: Special verdict: Form: Instructions to jury: Excessive damages: Appeal: Harmless errors.*

1. The finding of the jury upon the issue of contributory negligence will not be disturbed upon appeal if there is any credible evidence to support it.

2. In an action by a miner to recover for injuries caused by the fall of a large rock from the wall at which, by direction of defendant's ground boss, he was working as assistant to a driller, upon evidence showing, among other things, that he had no knowledge of the stone being loose, that such loosened condition was apt to occur from blasting, but, the mine not being well lighted, it often required careful inspection with the aid of a candle to discover it, and that it was the duty of the ground boss and the shovelers to make such inspection, it is *held* that plaintiff was under no obligation to test or inspect the wall himself, but had a right to rely upon the inspection made by the ground boss and shovelers unless the danger was

open and obvious to him, and that the question of his contributory negligence was one for the jury.

3. In such case, the fact that the stone fell very soon after plaintiff began working at the wall was persuasive evidence that it was loose and dangerous, and this, coupled with evidence tending to prove that the ground boss discovered such condition of the wall some days before and sent plaintiff there to work without warning him of the danger, was sufficient to sustain a finding of negligence on the part of the defendant mining company.

4. Testimony of the ground boss that when plaintiff went to work at the place of injury the rock was loose and dangerous to his knowledge, being corroborated by many facts and circumstances in the record, cannot be held incredible on appeal merely because he had made statements out of court which were not in harmony with such testimony. Such statements went only to his credibility, which was a question for the jury.

5. The dangerous condition existing at the place where plaintiff was set at work, to the knowledge of defendant and unknown to plaintiff, proof that defendant adopted the usual and customary methods of doing the work did not relieve it of liability.

6. The doctrine that a master is not liable for failure to provide a safe place to work where the employees themselves are engaged in preparing the working place which is constantly changing as they proceed with their work, has no application to the case here presented; and an instruction embodying such doctrine was properly refused.

7. The inclusion in the special verdict of a question as to whether the ground boss notified plaintiff before the accident that the upper part of the wall in question had separated from the roof of the drift, answered by the court "No," was not prejudicial error, especially since no different form of questions was requested and no objection made to the form of the special verdict submitted.

8. A special verdict which is framed upon the assumption that one material controverted question will be answered favorably to the plaintiff, though in bad form, was not prejudicially erroneous where the court specially charged the jury that there was no intention to intimate how such question should be answered.

9. It is not prejudicial error to refuse a requested instruction which, though good law in the abstract, could not have aided the jury in answering the question to which it was directed.

10  Where plaintiff, at the time of his injury, was twenty-five years
      of age and in perfect health, had a wife and one child depend-
      ent upon him, and was earning $2.25 per day, and his injuries
      were of a most serious character, causing much pain and suf-
      fering and total and permanent inability to work, an award of
      $11,000 was not excessive.

APPEAL from a judgment of the circuit court for Iowa
county: GEORGE CLEMENTSON, Circuit Judge.  *Affirmed.*

This action was brought to recover damages sustained by
plaintiff on account of injuries received in the defendant's
mine through the negligence of the defendant.  The follow-
ing verdict was returned:

"(1) Was the plaintiff injured on the 21st day of May,
1912, by the fall of a large stone that was a part of the south
wall of the drift in the defendant's mine, which stone pro-
jected from the top of said wall over the place where the
plaintiff was set at drilling by Cushman, the defendant's
ground boss, who had the direction of the underground work-
ings of said mine?  A. Yes (by the court).

"(2) Before the plaintiff began to drill on the day in
question, had the wall above the place where he was at work
separated from the cap-rock which formed the roof of the
drift?  A. Yes.

"(3) Did said ground boss, before he set the plaintiff at
work drilling at said place, know that the top of the wall at
said place had, to some extent, separated from the cap-rock
that formed the roof of said drift?  A. Yes.  .

"(4) Should said ground boss, as a man of ordinary care,
prudence, and experience as a miner, under all of the facts
and circumstances, have known that by reason of the separa-
tion of the upper stone of said wall from the cap-rock the
place where he set the plaintiff at work was probably an un-
safe place to drill and have warned the plaintiff of the condi-
tion of the wall?  A. Yes.

"(5) Did Cushman inform the plaintiff before the acci-
dent that the upper part of the wall where he set him at work
had separated from the roof of the drift?  A. No (by the
court).

"(6) Was the plaintiff aware of the condition of the wall at that place? *A.* No.

"(7) Was Cushman wanting in ordinary care, that is, was he negligent in setting the plaintiff at work drilling at the place in question without notifying him of the condition of the top of the wall, and ought Cushman, as a man of ordinary care, intelligence, and experience as a miner, to have reasonably foreseen under the attending circumstances that in setting the plaintiff to drill in that wall without warning him of its condition, that as a natural and probable result of so doing it was to be reasonably apprehended that a personal injury to the plaintiff might probably result? *A.* Yes.

"(8) Was the plaintiff guilty of any want of ordinary care which contributed to produce the injury he received? *A.* No.

"(9) If the court should decide upon your answers to these questions that the plaintiff is entitled to recover, what sum of money will compensate him for the injury he received? *A.* $11,000."

Judgment was rendered in favor of the plaintiff upon the verdict, from which this appeal was taken.

For the appellant there was a brief by *T. M. Priestly* and *Aylward, Davies & Olbrich,* and oral argument by *J. A. Aylward.*

For the respondent there was a brief by *Fiedler & Fiedler,* and oral argument by *E. C. Fiedler.*

KERWIN, J. The plaintiff was injured on the 21st day of May, 1912, while at work in the defendant's mine. He was employed as an assistant to the driller, one Byke. The mine is located in Iowa county, Wisconsin. At the time of the injury it was being operated by running a drift seven feet high and between forty and sixty feet wide easterly from the main shaft and about 100 feet below the surface of the ground. The drift was carried through the rock to a point about 1,200 feet from the main shaft. The material being removed from the drift as it was carried eastward consisted of limestone,

.glass rock, clay bed, and brown rock, and over the brown rock lay the cap-rock, which formed the cap or roof of the drift. Supporting pillars of natural rock were left through the center of the drift.  Also there were supports constructed by gobbing and timbering at different points along the drift. Gobbing consists of making piles of barren or non-ore-producing rock extending from the floor to the cap-rock or roof.

The accident occurred on the south wall or side of the drift, about twenty feet from the easterly end or forehead thereof. The work in the mine at the time of the injury was carried on by first drilling a series of holes either in the side wall or the forehead.  These holes were loaded with sticks of dynamite, which were exploded in the evening after the workmen had gone, and in the morning the drillers proceeded with their drilling in another part of the mine and the shovelers cleaned the rock loosened by the blast and the trammers carried the ore-bearing rock to the shaft over the tramway.

A large rock in the south wall, four and one-half feet from the floor and projecting two or three feet from the side wall up near the cap-rock or roof and weighing from 3,500 to 4,000 pounds, fell upon the plaintiff and injured him while he was engaged in assisting the driller.

The negligence alleged is that the defendant failed to furnish a safe place for plaintiff to work, in consequence of which unsafe and dangerous condition of the mine the plaintiff was injured by the fall of the rock in question; that the defendant had knowledge that the place was dangerous and failed to inform plaintiff thereof.  The complaint also alleges that on the 21st day of May, 1912, or at any time prior thereto, the defendant had not filed with the Industrial Accident Board of Wisconsin a written statement to the effect that it would accept the provisions of ch. 50 of the Laws of 1911 of the state of Wisconsin, and the defendant was not on said day nor prior thereto subject to the provisions of said act.  This allegation is admitted.

The several assignments of error will be considered in the order discussed in appellant's brief. It is first contended that a verdict should have been directed (a) because the undisputed evidence shows that the plaintiff was guilty of contributory negligence, and (b) that there was no evidence sufficient to warrant the jury in finding the defendant guilty of negligence.

1. Counsel for appellant makes no claim that assumption of the ordinary hazards of the employment is a defense, but insists that plaintiff was guilty of contributory negligence as matter of law, because he knew or ought to have known that the place was dangerous; that he was familiar with the premises and work and assisted in making the working place; that the mine was well lighted and the danger as obvious to the plaintiff as to the defendant's foreman.

On the part of plaintiff it is contended that no duty rested upon plaintiff or the driller, Byke, to inspect or prepare the working place for the driller, but on the contrary that duty was especially delegated to the ground boss, one Cushman, and that he and the shovelers were charged with that duty; that the mine was not well lighted and the danger not obvious, and was unknown to plaintiff but known to defendant. The jury found that the plaintiff was not guilty of contributory negligence, and under the repeated decisions of this court the finding cannot be disturbed if there is any credible evidence to support it.

The evidence shows that it was the duty of the shovelers, under the charge and direction of the ground foreman, to make inspection after the blasting and test the rock with pick and hammer, and also examine the cracks in the rocks with the aid of a candle and clear away all loose rock; that no duty to inspect rested upon plaintiff or the driller; that their only duty was to drill after the place had been prepared for them; that aside from the rocks removed by the blasting, other rocks are shattered or cracked but remain unmoved from the walls

or forehead, so that careful examination and inspection becomes necessary in order to determine whether such rocks are dangerous to persons working under or near them.

There is evidence that plaintiff did not know that the rock which fell and caused the injury was loose or dangerous, but counsel says he should have examined it. The plaintiff was under no obligation to test it or make inspection of it. He had a right to rely upon inspection by the ground boss and shovelers, whose duty it was to inspect, unless the danger was open and obvious to him. There is evidence that the danger was not obvious, that the mine was not well lighted, that each man carried a candle, and that in order to discover the dangerous condition of rocks it was often necessary to examine the cracks with the aid of a candle, in order to discover signs of separation or settlement.

There was no duty on the part of the driller to inspect or examine, and, even if so, his negligence could not be attributed to the plaintiff. Sec. 2394—1, Stats. Neither Byke nor plaintiff had anything to do with clearing away the rock after the blasting and nothing to do with preparing the place where they drilled. They drilled where they were ordered to drill by the ground boss, Cushman. Plaintiff's duties were to do what he was ordered to do by the driller. He testified: "My duties were to assist the drillman. I was backer. That was to drill and break ground and put in shots. I was only assistant man. I helped set up the machine and keep the bolts tight and changed the steel and squirted the water in the hole that was drilled."

Counsel for appellant argues that the evidence shows that the mine was well lighted. There is, however, conflict on this point. Byke, the driller, testified that the mine was dark, that every man carried a candle, no lights sticking around, no lamps, no electric lights, gob comes close to the pillar, you can't see there. The witness further testified that you would have to put the candle up close to see the rock.

There is ample evidence that the dangerous condition of the rock could only be discovered by holding a candle close to it, in view of the poorly lighted condition of the mine. Counsel cites us to evidence of plaintiff that he had all the light he wanted in his work. True, he carried a candle and that doubtless was sufficient for his work, but not sufficient to light up the mine. Byke, the driller, testified:

"Q. Was there any light over by this pillar where you were sent to drill? A. No; gob comes close to the pillar, you can't see there . . . here is the pillar south; throw the rock back up against the pillar; can't see from there one side to the other.

"Q. If you didn't have any candle, no light there, could you see the rock? A. No.

"Q. You would have to put the candle right close up to it? A. Yes, to see it.

"Q. You had all the candles you wanted, didn't you? A. Yes, can't carry more than one candle.

"Q. And you had all the light you wanted, didn't you? A. Well, we had one candle."

About three weeks before the injury the plaintiff and Byke, the driller, had blasted at the place in question and the ground boss and shovelers cleared away the rock blasted out, and the projecting rock which fell remained. This condition continued for about three weeks while plaintiff was working in other parts of the mine, when the ground foreman sent the driller and the plaintiff to drill close to the rock, and shortly after they commenced drilling the rock fell and caused the injury complained of. There is evidence that during the time the plaintiff was working in another part of the mine the ground foreman discovered that the place in question was dangerous and sent the plaintiff and the driller there to work without warning them of the danger. Upon the evidence in the record we are convinced that the question of contributory negligence was for the jury. *Jakopac v. Newport M. Co.* 153 Wis. 176, 140 N. W. 1060; *Holloway v. H. W.*

*Johns-Manville Co.* 135 Wis. 629, 116 N. W. 635; *Hamann v. Milwaukee B. Co.* 136 Wis. 39, 116 N. W. 854; *Landry v. G. N. R. Co.* 152 Wis. 379, 140 N. W. 75.

A long line of cases is cited by the learned counsel for appellant to the point that the evidence shows as matter of law that plaintiff was guilty of contributory negligence. *Hulien v. C. & N. W. R. Co.* 107 Wis. 122, 82 N. W. 710; *Jacoby v. C. & N. W. R. Co.* 137 Wis. 131, 118 N. W. 635; *West v. Bayfield M. Co.* 144 Wis. 106, 128 N. W. 992; *Hynes v. Holt L. Co.* 147 Wis. 172, 132 N. W. 889; *Larsson v. Mc-Clure,* 95 Wis. 533, 70 N. W. 662; *Schiefelbein v. Badger P. Co.* 101 Wis. 402, 77 N. W. 742; *Gardner v. Paine L. Co.* 123 Wis. 338, 101 N. W. 700; *Gossens v. Mattoon Mfg. Co.* 104 Wis. 406, 80 N. W. 589; *Erdman v. Ill. S. Co.* 95 Wis. 6, 69 N. W. 993; *Foss v. Bigelow,* 102 Wis. 413, 78 N. W. 570. In these cases the danger was obvious and the plaintiff put himself in position of peril. In the *Jacoby Case,* 137 Wis. 131 (118 N. W. 635), at page 135 the court said: "He knew the work was dangerous and that the rules of the company explicitly prohibited him from doing the very thing he did do." In *Hulien v. C. & N. W. R. Co.,* supra, the plaintiff deliberately put himself in a place of danger with full knowledge of the danger. In *West v. Bayfield M. Co.,* supra, the court held the question of contributory negligence was for the jury. In *Hynes v. Holt L. Co.,* supra, the danger was apparent, and the plaintiff created the dangerous condition and understood the situation and knew the danger and needed no warning. *Larsson v. McClure,* supra, involves the question of assumption of risk. In *Schiefelbein v. Badger P. Co.,* supra, it was held that no negligence of defendant was shown and that the cause of the injury was perfectly apparent. In *Gardner v. Paine L. Co.,* supra, it was held that the danger was apparent. The court said: "The danger signal was before him, and could not be mistaken except through the most heedless inattention." In

*Gossens v. Mattoon Mfg. Co., supra,* the *Erdman Case,* and the *Foss Case* it appeared that the danger was open and obvious. So it will be seen that the cases relied upon by appellant under this head are not controlling here.

2. Respecting the negligence of the defendant little need be said. The jury found the defendant guilty of negligence which was the proximate cause of the injury, and there is ample evidence to support the findings. Counsel for appellant attacks the answer of the jury to the second question as not supported by the evidence. The fact that the rock fell shortly after plaintiff began to work under it is quite persuasive that it was loose and dangerous. *Cummings v. Nat. F. Co.* 60 Wis. 603, 18 N. W. 742, 20 N. W. 665; *Mulcairns v. Janesville,* 67 Wis. 24, 29 N. W. 565; *Klitzke v. Webb,* 120 Wis. 254, 97 N. W. 901; *Parker v. Fairbanks-Morse Mfg. Co.* 130 Wis. 525, 110 N. W. 409; *Schmidt v. J. G. Johnson Co.* 145 Wis. 49, 129 N. W. 657.

But in addition to this we have the positive testimony of the ground boss, Cushman, that when plaintiff went to work at the place of injury the rock was loose and dangerous, to his knowledge. A very vigorous attack is made by counsel for appellant on this evidence of Cushman, and his evidence is denominated perjured evidence. True, it appears in the record that Cushman made statements out of court out of harmony and in conflict with his testimony in court. His statements out of court were not under oath, and many facts and circumstances appear in the record which indicate that his testimony in court was true. However, the question of its credibility was for the jury. On this point counsel for appellant relies on *Groth v. Thomann,* 110 Wis. 488, 86 N. W. 178; *A. C. Conn Co. v. Little Suamico L. Mfg. Co.* 74 Wis. 652, 43 N. W. 660. It will be seen that in *Groth v. Thomann* the physical facts were such as to leave no question for the jury, and in *A. C. Conn Co. v. Little Suamico L. Mfg. Co.* it was held that testimony that a witness made

statements out of court on material facts different from his testimony in court is competent impeaching testimony.

It is further insisted that no breach of duty was shown on the part of appellant. This contention is based chiefly upon the proposition that where the danger is open and obvious no duty to warn rests upon the master. We have shown that whether the danger was open and obvious was a jury question, and the finding of the jury upon that question cannot be disturbed. *McMahon v. Ida M. Co.* 95 Wis. 308, 70 N. W. 478; *Nix v. C. Reiss C. Co.* 114 Wis. 493, 90 N. W. 437.

It is further urged by appellant that, even if the danger did exist, defendant was not liable if it adopted the usual and customary methods of doing the work. This contention is unsound. Ch. 485, Laws of 1911; *Sparrow v. Menasha P. Co.* 154 Wis. 459, 143 N. W. 317. It is also contended by appellant that there was no liability for the dangerous condition, if it in fact existed, because the plaintiff with other employees was engaged in preparing the working place and that such place was constantly changing, and that questions along these lines should have been submitted to the jury. Counsel relies under this head upon *Mielke v. C. & N. W. R. Co.* 103 Wis. 1, 79 N. W. 22. But the doctrine of that and other similar cases has no application to the instant case. Ch. 485, Laws of 1911; *Sparrow v. Menasha P. Co., supra.*

3. Error is assigned in the submission of the special verdict and in answering the fifth question thereof. The criticism of the verdict is that subsequent questions are based upon the assumption that the jury would answer question No. 2 "Yes." The verdict obviously is not in good form in the regard complained of. It appears from the record, however, that when the court's attention was drawn to the point it charged the jury upon the question, making it clear that there was no intention to intimate how any question should

be answered. The form of a special verdict is largely in the discretion of the trial court. *Lemke v. Milwaukee E. R. & L. Co.* 149 Wis. 535, 136 N. W. 286; *Milwaukee T. Co. v. Milwaukee,* 151 Wis. 224, 138 N. W. 707; *Gunsten v. Green,* 153 Wis. 413, 141 N. W. 239.

Nor was it error to include the fifth question in the verdict which was answered by the court. *Baumann v. C. Reiss C. Co.* 118 Wis. 330, 95 N. W. 139; *Keena v. American B. T. Co.* 144 Wis. 231, 128 N. W. 858. Question 5 was not submitted to the jury, and the answer to it by the court, in view of the charge given on the point, could not have prejudiced the jury. Moreover, it does not appear that any different form of questions was requested, and no objection made to the form of the verdict submitted and no exception taken. If the verdict was objectionable in form, counsel should have objected and entered due exception to the refusal of the court to correct it. *Ludvigson v. Superior S. B. Co.* 147 Wis. 34, 132 N. W. 621.

4. Error is assigned in refusal to instruct as requested. The defendant requested the following instructions, which were refused:

"1. In regard to the seventh question of the special verdict I instruct you as follows: The presumption of fact at the start as to any given situation, where liability of the master to the servant or through him is in controversy, is that the duties of the former have been performed, and such presumption should prevail, whenever the fact is called in question, until overcome by evidence establishing the contrary to a reasonable certainty."

"2. In regard to the fourth question of the special verdict I instruct you as follows: Where the dangers of the working place are created by the servants and employees of the master, including the foreman, and changed from time to time in the due course of operations, the master is under no duty to furnish a safe place for the servants to work, because that duty has been imposed upon the servants themselves by the master."

Respecting the first instruction we cannot see that any prejudicial error was committed in refusing it. It is doubtless good law in the abstract, but we do not see that it was strictly applicable to the seventh question, or could have aided the jury in answering it. The instruction might have been applicable to some other question of the verdict, for example question No. 2, but we are unable to see how it could aid the jury in answering question No. 7.

Nor do we think there was any prejudicial error in refusing the second instruction requested. It had no application to the facts in this case. This instruction was based upon the doctrine of *Knudsen v. La Crosse S. Co.* 145 Wis. 394, 130 N. W. 519. But in the *Knudsen Case* a safe place was furnished, and was rendered unsafe by a crew of which Knudsen was one, while doing the work which created the danger and caused the injury. *Sparrow v. Menasha P. Co.* 154 Wis. 459, 143 N. W. 317.

5. Error is assigned in refusing to change the answers to questions 4, 6, and 8. Nothing further need be said upon this assignment of error. The answers to these questions were for the jury. There is ample evidence to support the findings.

6. It is also urged that the damages are excessive. Prior to the injury the plaintiff was in perfect health. He was twenty-five years of age, had a wife and one child dependent upon him for support, and was earning $2.25 per day. The injuries were of the most serious character and the pain and suffering great. There is evidence that he will never be able to work again and that no treatment can restore him to normal condition. After a careful examination of the evidence we do not feel warranted in holding that the damages are excessive.

7. A motion was made in the court below for a new trial on the ground of misconduct of the jury. This motion was based upon affidavits which appear in the record. The

court denied the motion, and we are convinced from a careful examination of the record and the affidavits used upon the motion that no error was committed in this regard. We find no prejudicial error in the record and are convinced that the judgment of the court below should be affirmed.

*By the Court.*—The judgment is affirmed.