HIND, Respondent, vs. THOMAS, Appellant.

*February 7—March 14, 1922.*

*Sales: Warranties: Nondisclosure of latent defect: Question for jury: Reliance upon representations: Evidence: Value of horse if sound: Appeal: Objections to form of special verdict.*

1. The question whether the seller of a horse, expressly or by implication, warranted it to be all right and not spavined, is for the jury.
2. Under some circumstances the intentional nondisclosure of a latent defect by a seller may avoid a sale though there is no warranty.

3. In an action for the purchase price of a horse, where the defense was that the horse was spavined and that plaintiff had represented it to be all right, testimony that the horse, if sound, would have been worth from $220 to $275 in the market was relevant to the question whether defendant relied on any representations made at the time he bought the horse for $147.50.

4. An objection that the issues submitted in a special verdict were not in proper form could not be raised for the first time on appeal.

5. Where defendant's counterclaim was not sustained, his objection to the admission of evidence for the purpose of minimizing damages on the counterclaim will not be considered on appeal.

ESCHWEILER, J., dissents.

APPEAL from a judgment of the circuit court for Iowa county: L. H. BANCROFT, Circuit Judge. *Affirmed.*

Action to recover $147.50, the purchase price of a mare sold to defendant by plaintiff at a certain auction sale in Iowa county.

Defendant admitted that he bought the mare, but alleged that the sale was conditioned on a warranty that the horse was sound, and that in due time he rescinded the sale because the mare was spavined, and attempted to return her, but was forced to keep her by plaintiff. By way of counterclaim defendant alleged there was due him $122.75 for fourteen months' care of the mare.

The auction was held on plaintiff's farm. After several horses had been sold the mare in question was brought out. There was evidence tending to show that the bidding was very slow; that the auctioneer called upon plaintiff to say what was the matter with the animal; that thereupon plaintiff stated that the mare's legs were stocked, or swollen, by reason of her standing in the barn without exercise; that the swelling was due partly to a kick; and that her hockjoints were slightly enlarged. Defendant's witnesses testified that when the auctioneer called on the plaintiff he stated that the mare was all right; that the swollen legs "would

come out all right," and that there was nothing wrong with her. Plaintiff's witnesses stated that plaintiff guaranteed the mare as to her wind, "but not otherwise."

It is undisputed that plaintiff was aware of the spavins. Defendant heard the auctioneer say that horses could be tried out on the farm, but that once taken on the road they belonged to the buyer. Two weeks after the sale defendant took the mare to the farm of plaintiff, who refused to take her back.

Over the objection of defendant, plaintiff was allowed to introduce testimony tending to show that, had the mare been sound, her value would have been greatly in excess of the auction price; also that shortly after the sale plaintiff told defendant of a prospective purchaser who would pay the auction price for the mare. Plaintiff requested a finding as to whether defendant had an offer to sell the mare for the same price as he paid for her, which request was refused.

In a special verdict the jury found that plaintiff did not represent the mare to be all right; that defendant relied on no such representation; and that the fair compensation for the care of the mare was $119. Judgment was entered in favor of plaintiff for the amount of his claim and the counterclaim was dismissed. From this judgment defendant appealed.

For the appellant there was a brief by *Kopp & Brunckhorst,* and oral argument by *E. E. Burns,* all of Platteville.

For the respondent there was a brief by *Fiedler, Fiedler & Jackson* of Mineral Point, and oral argument by *R. T. Jackson.*

JONES, J. The nature of the defense relied on by defendant is found in the following allegation of the answer:

"That at said sale, when the horse in question was on the block, the auctioneer, plaintiff's agent, represented and warranted that while the said animal had swollen legs they

were entirely from non-use, and that anybody purchasing was safe in so doing; that the owner guaranteed and warranted that the said legs would 'come all right,' and that the horse was sound in every respect."

The following was the first question in the special verdict: "Did the plaintiff at the time of the sale represent this horse to be all right except for the swelling of the hind legs caused from standing in the barn?" To which the jury answered "No."

The next question was, "Did the defendant rely upon these representations at the time he bought in the horse at such sale?" To which the jury answered "No."

It will be seen that one of the main issues made by the pleadings was whether there was an express warranty and that this claim was negatived 'by the verdict. It is now claimed by defendant's counsel that by reason of concealment and deceit there was an implied warranty.

It is doubtless true that under some circumstances the intentional nondisclosure of a latent defect by the seller may avoid a sale though there is no warranty. *Dowling v. Lawrence,* 58 Wis. 282, 16 N. W. 552; 26 Corp. Jur. 1074, 1075.

The question is whether, under the facts of this case, it was the duty of the court to set aside the verdict of the jury because the defendant did not make full disclosure of all the facts known to him.

The Wisconsin cases principally relied on by defendant are *Dowling v. Lawrence,* 58 Wis. 282, 16 N. W. 552; *Schauer v. Bodenheimer,* 150 Wis. 550, 137 N. W..785; *Giffert v. West,* 33 Wis. 617; *Brillion L. Co. v. Barnard,* 131 Wis. 284, 111 N. W. 483.

In the first of these cases there was direct evidence of an express warranty, and the judgment was reversed because of error in rejecting evidence on that subject.

The second was an action for deceit on false representation that the mare had an ailment of little consequence, while in fact she had mange, a much more serious disease.

Some of the questions in the special verdict were answered in the buyer's favor, but the jury disagreed on the question whether the seller deceitfully failed to inform the buyer of the facts. The court, notwithstanding this fact, entered judgment for the buyer. The seller's counsel had proposed a question whether the buyer relied on the representations made, and the request was denied. It was held by this court that whether the buyer relied on the representations made and whether the concealments induced the purchase were clearly questions for the jury.

The third case above cited related to the purchase of a note, and the fourth is to the effect that, if a person undertakes to give information to one who is about to enter into a contract of suretyship relative to the hazards which may arise, he must make full disclosure.

In *Smith v. Reed,* 141 Wis. 483, 124 N. W. 489, cited by respondent's counsel, the buyer relied on a warranty. The jury found that the seller represented that the horse was all right but did not say he would guarantee that it was all right. The jury found that the horse was diseased but that the buyer did not rely on the representation. It was held in this court that the burden of proof was upon the party alleging the warranty, that the representation did not amount to a warranty unless relied on, and that the question whether the representation was relied on was for the jury.

It is argued by defendant's counsel with much earnestness that the statement made by plaintiff was "half truths" and well adapted to deceive. On the other hand, it is argued by plaintiff's counsel that the refusal to make any warranty except that the mare was "sound in the wind" negatived any inference of an implied warranty and that the defects were not latent, since it was evident that the legs of the mare were swollen and the plaintiff stated that the hocks were enlarged and that she had been kicked.

The Century Dictionary defines spavin as "a disease of horses affecting the hock-joint, or joint of the hind leg

between the knee and the fetlock." All these matters were doubtless presented to the jury by able counsel, and they found that there was no warranty and no reliance on the representations made.

It may be that jurors would be as suspicious of an "enlarged hock" as of a spavin, and we cannot say but the jury were justified in finding that the defendant had notice, or sufficient facts to give notice, of the defects complained of.

It is argued that "ethics of the horse trade, as every practical lawyer must take professional notice, are not up to the legal requirements concerning fair dealing. There is a strong lingering tendency to applaud every act of deception, including plain falsehood, and to deride the victim for his credulity. This custom, which arose out of matching of wits in the exchange of hacks, readily extends to the legitimate sale for money consideration, and must account for many surprises in verdicts concerning horse deals," and the inference is drawn that the courts should disregard the verdict of the jury and grant a new trial.

There may be more truth than poetry in this characterization of the ancient profession of horse trading, but we know of no better tribunal for determining the facts in a deal relating to horseflesh than the average jury.

One of the assignments of error was the admission of testimony as to the value of the mare if she had been sound. Defendant bought her for $147.50. There was testimony that if sound she would have been worth from $225 to $275 in the market. This testimony was relevant to the question whether defendant relied on the representations made, and similar evidence was sanctioned in *Schauer v. Bodenheimer*, 150 Wis. 550, 137 N. W. 785.

Objection is made by appellant's counsel because the court refused to receive evidence offered by them that the general scale of prices at the sale was low. We consider that such evidence was irrelevant and was properly rejected.

Objection is made by appellant's counsel that the court in its instruction regarding the second question, the one relating to reliance on the representation, erred in unconditionally submitting it to the jury. This amounts to an objection to the form of the special verdict, and the point is raised that if the question as to the representations was answered "No," it would logically follow that the answer to the next question would be "No."

In the instructions the jury were told to answer each question "Yes" or "No" as they should be convinced by the preponderance of the testimony. No other questions were proposed by counsel for either party. No exception was taken to the substance or form of the questions.

The usual motions were made to change the answers to these two questions and to direct judgment for defendant, and, if the motions were denied, for a new trial on the grounds that the verdict was contrary to the evidence and because improper testimony was received.

The two main issues in the case were submitted in the special verdict and answered. If they were not submitted in proper form, it is now too late to raise the objection for the first time. *Hrouska v. Janke*, 66 Wis. 252, 28 N. W. 166; *Stiles v. Neillsville M. Co.* 87 Wis. 266, 58 N. W. 411; *Dolphin v. Peacock M. Co.* 155 Wis. 439, 144 N. W. 1112; *Ludvigson v. Superior S. B. Co.* 147 Wis. 34, 132 N. W. 621.

Objection is also made because the court admitted evidence of the offer made by a third party, after the sale to defendant, to pay defendant for the mare as much as he had paid. This evidence was given only for the purpose of minimizing damage on defendant's counterclaim, and, since the counterclaim is not sustained, this objection as well as some others raised by respondent's counsel do not require discussion.

*By the Court.*—Judgment affirmed.

Eschweiler, J. (*dissenting*).  When at the time of the sale the plaintiff undertook to state the condition of the horse's legs, I think he was legally and morally bound to tell the whole truth.  His then statement, while knowing of the existence of the serious defect not disclosed, should be held to amount to an assertion that there was no other defect than the one he specifically mentioned.  His concealment of the other material fact ought to be considered, under the facts disclosed, fraud, as a matter of law.